GEORGE S. STRINGFIELD, ELIAS EINSTEIN, JOSEPH WAXEL-
BAUM, AND ALEXANDER LUMLEY v. JOHNSON
VIVIAN AND ARTHUR W. NOBLE.

*Banks and banking—Protest of draft—Return of dishonored paper
—Custom or usage.*

A Michigan merchant bought a Chicago draft of his home bankers, payable to his order, and indorsed and mailed same to a New York creditor to apply, if collected, on his account. The creditor sent the draft to Chicago, where it was presented and protested, and four days afterwards the draft and notices of protest reached the creditor, who mailed notice to the debtor, and telegraphed to know why the draft was dishonored, who answered by wire to return the draft and he would send a new one.

Five days after its receipt the creditor returned the draft, which reached the debtor by due course of mail, but *after* the failure of the bankers. In his letter the creditor requested the debtor to give him credit for the draft, and remit a new one.

*Held*, in a suit by the creditor on his account, with a special count upon the indorsement of the protested draft, that the draft had been properly dealt with by the creditor, and that the protest and notices were sent in due time; that, while the creditor was a collecting agent, he was something more, holding the draft collaterally to his account, and if the debtor wished to get back his paper he had the right to do so by paying the debt, but not otherwise.

*Held*, further, that evidence of a custom of New York whole-

sale houses of returning dishonored drafts to their debtors, if admissible, was for the jury; but—

*Held*, further, that the law of negotiable paper has never been allowed to be changed by *local* customs even more general than the one contended for, unless *possibly* when the paper was purely local, and it is difficult to see how New York business usages could apply to such a draft as the one in suit.

Error to Marquette. (Grant, J.) Argued November 9, 1886. Decided November 17, 1886.

Assumpsit. Plaintiffs bring error. Reversed. The facts are stated in the opinion.

*Ball & Hanscom,* for appellants.

*E. E. Osborn,* for defendants.

CAMPBELL, C. J. Plaintiffs sued defendants for a balance of account, with a special count upon the indorsement of a protested draft which had been taken in conditional payment, and dishonored.

The material facts show that on December 14, 1883, defendants, dealing at Ishpeming, in Marquette county, bought a draft of D. F. Wadsworth & Co., bankers of that place, on a Chicago bank for $475, payable to defendants' order, which they indorsed and mailed to plaintiffs, who are New York merchants, to apply, if collected, as a payment of $500, being with $25 rebate. Plaintiffs received it to apply when paid, and sent it to Chicago, where, on the twentieth of December, it was presented and protested.

On December 24, which was Monday, the draft and notices of protest reached plaintiffs, in New York city, who mailed notice to defendants, and also telegraphed to know why the draft was dishonored. Defendants telegraphed back to return it, and they would send a new one; also that they had made a further remittance of $500.

On the twenty-ninth of December plaintiffs returned the

draft, which, in course of mail, reached Ishpeming on January 2, 1884, when Wadsworth & Co. had failed.

Defendants claim that the plaintiffs were bound to return them the draft at once, so that they could have got Wadsworth & Co. to redeem it before their failure, and that the omission to do so made them liable for the consequences. The plaintiffs' letter of December 29 was as follows:

"Inclosed please find protested draft, for which please give us credit for $477.91, and remit us new draft."

The court below held that this letter showed conclusively that plaintiffs only held the draft as agents, and had no right to retain it, but should at once have returned it, and ordered a verdict for defendants.

The testimony showed very clearly that the draft had been properly dealt with by plaintiffs, and that the protest and notices were sent in due time. Upon this we do not think there is any conflict of testimony, and it seems to have been so considered in the court below. The decision went upon the ground that the plaintiffs were mere collecting agents until payment, and had not been diligent.

That they had the duties of collecting agents is true, but they were something more. There is no rule of law which requires a person who has received a security conditionally to give it up again at one time more than another. If defendants had a right to recall the draft when protested, they had a right, on the same principle of agency, to recall it before dishonor, or to change its application. We do not so understand the authorities. It is not reasonable to deprive a holder of what he has taken collaterally, any more than of what he has taken absolutely. If a debtor wishes to get back his paper he has a right to do so by paying the debt, but not otherwise. If plaintiffs had taken this paper in absolute payment of their account, it is not very clear why they would not have had the right to hold defendants as indorsers on its dishonor, although the original account was canceled, and

they would not have been compellable to return it unpaid. They had the right to so credit it if they had seen fit, and the same difficulty would have arisen which has now arisen, namely, that defendants, as indorsers, would have had to pay paper which the failure of the drawer prevented them from getting refunded. It is unfortunate that it was not returned; but there is nothing in the law of negotiable paper which would have required more than plaintiffs did. Defendants had not warned plaintiffs that they had any fears of the solvency of the drawers of the draft, and there was nothing in the telegram to indicate uneasiness or require haste. Plaintiffs could not be at fault for not having the draft sent back to Ishpeming for presentation to the drawers unless they had reason to believe that delay would be dangerous. There was no such evidence in the case, and nothing was shown which should have led them to think so. Defendants themselves do not appear to have been alarmed any more than plaintiffs. Had they been warned of danger, or urged to immediate action in such a way as to apprise them that they ought to be quick in enforcing their collateral security, they might have been bound to look after it. They were in no case bound to return it to defendants unless received on that condition. Defendants could always have redeemed it if they had seen fit.

There was evidence aimed at showing that New York wholesale houses had a custom of returning dishonored drafts to their debtors from whom they received them. If this testimony was admissible, the case should have been left for the jury. But there were two objections to it. The law of negotiable paper has never been allowed to be changed by local customs even more general than this, unless possibly when the paper itself is purely local. This was a foreign bill, drawn and indorsed in Michigan, and payable in Chicago. It is difficult to see how New York business usages could apply to such an instrument. And, further, no such

custom was even colorably shown. The witness who swore to it did so as a usage of two houses only. He had no further knowledge. Beyond this the only proof offered was of single cases, which had no tendency to prove custom. See *Lamb v. Henderson*, 63 Mich. 302, and citations.

We can see no reason why plaintiffs could not recover either on the account or on the indorsement. The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.