ELMER RUNYAN, DEFENDANT IN ERROR, PLAINTIFF BELOW, v. THE CENTRAL RAILROAD COMPANY, PLAINTIFF IN ERROR, DEFENDANT BELOW.

Argued June 9, 1899—Decided November 13, 1899.

1. When passengers in the passenger cars of a railroad have carried with them into such cars, and with them upon their journey, small packages of merchandise, in derogation of the common law contract of carriage, the usage or practice to do so, in order that the passengers may rely upon it as a regulation of the railroad company that such packages can be so carried, must be so general, certain, uniform and notorious, and it must be so clearly proved that it can be concluded that the officers and agents of such company possessed knowledge of such usage and acquiesced therein, in such manner that it became a part of the contract of carriage.

2. The proof of such usage must not only be clear and explicit, but it also must be distinguished from mere acts of accommodation. The mere fact that such acts of accommodation have been constantly permitted by the servants of the railroad company, not in obedience to duty or contract, but as a matter of form and indulgence, cannot compel their continuance. Such mere accommodation can be discontinued at any time.

3. A habit of one particular passenger to carry such packages of merchandise into the passenger cars, and with him on his journey, will not constitute the usage or practice, which can be relied on by passengers as a general regulation of the railroad company.

4. The proof of usage involves questions both of law and fact. It is a question of law, what is a sufficient usage to bind parties. The usage must be strictly proved and construed, and when the facts are undisputed it becomes a question of law, whether such usage has been established, and its binding force upon the parties. Under such circumstances it cannot be left to the jury to determine whether the usage existed or what operation or force must be given to it.

5. When the facts and circumstances are undisputed by which a custom or usage is sought to be established, and they are such that but one legitimate reasonable conclusion or inference can be drawn, it becomes a question of law for the court to determine whether such usage has been proven or not. *Quere.* Can the habit of a single passenger to carry small packages of merchandise with him into the passenger car of a railroad company, and with him on his journey, with the knowledge of the servants of the company in charge of such cars, estop the company from examination of such merchandise in order to ascertain the contents, to justify his exclusion, without reasonable notice to him to discontinue such habit?

On error to the Union Circuit Court.

Before MAGIE, CHIEF JUSTICE, and Justices VAN SYCKEL, GARRISON and LIPPINCOTT.

For the plaintiff in error, *Corbin & Corbin.*

For the defendant in error, *McCarter, Williamson & McCarter.*

The opinion of the court was delivered by

LIPPINCOTT, J.   This is the same case in a different form, as reported in the Court of Errors and Appeals in 32 *Vroom* 537.

The facts up to a certain point are the same as set forth in the opinion in that case.

In that case the judgment of nonsuit was reversed, because of an erroneous rejection of evidence offered by the plaintiff on the trial thereof, tending to show, or introductory to the proof of, a custom, usage or practice on the part of the passengers of the defendant company to carry packages of merchandise with them into cars, to be transported with them on the journey, and to show that the company with knowledge of the custom, usage or practice had acquiesced in it, and that thereby arose a regulation of the company that such packages might be carried as personal baggage.

The plaintiff in this case had purchased a ticket from New

York to Elizabeth, on a passenger train between those places, and attempted to enter the car of the defendant to go to Elizabeth. He then had with him a small satchel containing sundry articles of use, and besides in his arms and hands a ten-pound package of nails and a letter file, which he had purchased in the city of New York. The agents of the defendant company refused to allow him to enter the car with the package of nails and letter file. He insisted upon entering the car with these packages. He was prevented from doing so, and he eventually took his passage to Elizabeth on a train of the Pennsylvania railroad, and he now sues to recover damages of the defendant company because of his exclusion from the cars of that company. He recovered a verdict against the company, upon which judgment has been entered, and the cause is now under review upon writ of error at the instance of the defendant.

The Court of Errors and Appeals, in its opinion (32 *Vroom* 537), held that the ticket of the plaintiff which he had purchased for his passage was but a token of his right to transportation, and that the plaintiff was a passenger with all his common law rights, and that " at common law he was entitled to take with him for use his personal baggage appropriate to the journey and its object—that is, not only wearing apparel for use and ornament, but also other articles, all within reasonable limit, the use of which was personal to him during his journey and in accomplishing its purposes."

The package of nails and the letter file in the hands of the plaintiff, under the evidence in the case, which is the same in this respect in the former case, were held in nowise to belong to the class of articles which he had the right to carry with him at common law, as they plainly were not for the personal use of the plaintiff upon the journey or in accomplishing its purpose.

But the court, in treating the offer of evidence which was erroneously excluded, said " that if the defendant company had, previous to the denial of the admission to their cars complained of, for a long time acquiesced in and made an accom-

modation for the carriage of small packages of merchandise of its passengers, in its passenger cars, so as to lead them to accept and rely upon its attitude in that respect as one of its regulations, it can resume its rights under the law only after reasonable notice of its rescission of the regulation so made. It could not suddenly enforce the right resumed against passengers who were in good faith traveling in reliance upon the previous regulation without reasonable notice, and who were ignorant of, and unprepared for any change in it. We think that the questions asked were admissible as a step in the plaintiff's proofs, and were wrongfully overruled, and for that reason the judgment should be reversed."

Therefore, the present case must be governed by this principle enunciated by the Court of Errors and Appeals, that a custom, usage or practice of passengers to carry small packages with them on the passenger cars, acquiesced in by a railroad company, embodies or engrafts itself into the contract of carriage of the passenger, as a regulation of the company, and can only be segregated from such contract by reasonable notice of the rescission of such regulation or reasonable notice of the resumption of the common law contract of carriage. This must be considered settled in this state, notwithstanding the fact that the questions which were proposed and excluded on the former trial were admissible, as it seems to me, upon an entirely different ground than that they tended to prove a custom or usage.

It will be noticed that the whole stress of the decision in the former case was placed upon the fact that the usage or custom was of such a character as gave the passenger a right to rely on it as a regulation which, for the time being, became a part of the contract of carriage.

In the case, *sub judice*, an attempt was made on trial, in behalf of the plaintiff, to establish a custom, usage or practice of passengers on this railroad to carry packages of merchandise into the cars with them on their journeys, and that provision had been made by the company for the carriage of such packages in this manner and to accommodate the pas-

sengers in the exercise of this custom and usage, and that by reason of these facts the defendant company had acquiesced in such custom or usage, and that upon its attitude in this respect the plaintiff had the right to rely, as one of its regulations, without notice of its discontinuance or rescission.

The plaintiff in this case relies entirely upon the establishment of a previous custom, usage or practice of passengers to carry small packages of merchandise with them into the cars and on the journey. This is made the basis of proof in this case, and it is not claimed that a right of recovery can stand upon any other ground.

After the evidence upon the part of the plaintiff had closed a motion to nonsuit was made and refused. The first assignment of error is based upon an exception allowed to this refusal.

The consideration of this assignment of error requires an examination into the question, whether the evidence is of such a character as that it should be sent to the jury to determine whether such a custom, usage or practice had been established, or, in other words, whether an implied regulation had been established that passengers could carry such packages with them.

In the decision in the Court of Errors and Appeals, the court was dealing with the overruling of an offer of evidence, and nothing at all was determined as to the character of proof necessary to establish the implied regulation, or necessary to establish the custom or usage from which acquiescence of the railroad company could be concluded, and upon which the plaintiff could rely as a part of his contract of carriage.

It is clear that such a custom or usage is in derogation of the contract at common law. It is in derogation of the common law right of the defendant, and strips it of a benefit of which it possessed at common law. It interpolates itself into the contract, and therefore the custom, usage or practice must be strictly proved, the evidence adduced to prove it must be clear, it must be strictly construed, and great care should be exercised in allowing a custom, usage or practice to

change contracts either expressly entered into or implied at common law. *Southwestern Virginia Mineral Co.* v. *Chase,* 95 *Va.* 50, 57; *Metcalf* v. *Weld,* 14 *Gray* 211; *Thornton et al.* v. *Suffolk Manufacturing Co.,* 10 *Cush.* 376; *Laws. Cust.* 99, 101; 27 *Am. & Eng. Encycl. L.,* tit. *"Usages and Customs,"* 717.

It is to be remembered that the right of the company to bar the plaintiff with merchandise was clear unless it be by force of some custom, usage or practice otherwise clearly established against the company in which they have clearly acquiesced, and the burden is upon the plaintiff to establish such custom, usage or practice and acquiescence by a preponderance of proof.

He is the only one who testified to any facts in relation to this matter, and he commences by showing that racks were adjusted to the sides of the car, near the roof thereof, and that these racks would hold such packages as he was carrying, and other similar packages, but he himself testifies that they were suitable for and intended also for packages and articles for the personal use of the passengers on their journey and to accomplish the purposes thereof, and, therefore, keeping in mind the rule of the common law in reference to the contract of carriage, the proof of the fact that racks were there into which small packages could be placed does not even in the slightest tend to show that the railroad had made provision in this way to carry merchandise. The presumption is the other way, and he testifies to nothing which overcomes it. It might just as well be insisted that the floor of the car between the seats was provided for this purpose, as well as such other unoccupied spaces which could be conveniently or inconveniently used for such purpose.

Again, he does not testify beyond his own use of these racks, or any other part of the car for such packages of merchandise. It may be well to refer specifically to his evidence in this respect, and perhaps well to set it out in its entirety. His whole evidence is as follows:

"*Q.* Have the trains or cars that run between Elizabeth and New York any provision for parcels?

"*A.* They have.

"*Q.* What is it?

"*A.* They have racks about that long and about that deep [witness illustrating].

"*Q.* You say about that long. What do you mean?

"*A.* About two feet six inches.

"*Q.* Where are they generally located?

"*A.* Along the upper side of the car just above the windows, between the windows, a little higher than the windows.

"*Q.* I think you have already testified that you have been accustomed to travel between New York and Elizabeth frequently?

"*A.* I have very often.

"*Q.* And have you frequently carried parcels of this kind on the cars?"

Here there was an objection to the question, and allowance and exception.

"*A.* Yes.

"*Q.* There never had been any objection to your doing this?

"*A.* Never before.

"*Q.* Can you tell us whether from your observation and experience, prior to and up to and including the thirteenth day of December, 1896, passengers traveling between New York and Elizabeth or other stations on the New York, New Jersey Central railroad were accustomed to and were permitted to carry packages?

"*A.* Yes, four times as big as mine."

Here there was an objection to the latter part of the answer, and the witness said, "I will say yes, then." And the latter part of the answer is stricken out.

"*Q.* For how long a time did you observe such a habit on the part of the Central Railroad Company allowing this to be done?

"*A*. Ever since I have been traveling over the road, for about ten years."

On cross-examination.

"*Q*. You say you have seen passengers in the cars of the Central Railroad Company for the last ten years put their parcels in the racks?

"*A*. Yes.

"*Q*. You did not know what was in them, except your own parcels?

"*A*. I did not.

"*Q*. You have seen umbrellas, hats, coats and cloaks put in the rack?

"*A*. Yes.

"*Q*. And shawls?

"*A*. Yes.

"*Q*. And small hand bags?

"*A*. Yes.

"*Q*. Could you put such a hand bag as you have in the racks?

"*A*. Yes.

"*Q*. But not much very bigger than that?

"*A*. Oh, yes, twice the size of that.

"*Q*. These racks are generally made of wire?

"*A*. Yes, I believe they are.

"*Q*. And are lightly constructed?

"*A*. Yes, I think they are strong enough to hold a man's weight.

"*Q*. Some of them are flat and some of them round, are they not?

"*A*. I have seen flat ones.

"*Q*. And they are put up under the roof of the car, and you have seen people put paper parcels in them?

"*A*. Yes, I have.

"*Q*. They are the same sort of racks on the Central railroad, substantially, as those used on all the roads?

"*A*. Except there are different shapes."

And on redirect examination.

"*Q.* Have you heard, previous to this, of any objection on the part of the railroad company to the carrying of parcels by the passengers owning them?

"*A.* No, sir."

It will be noticed that the witness carefully avoided, except so far as his own acts were concerned, testifying to or attempting to identify any other parcels or packages of merchandise which he had seen other passengers carrying into the cars, and he does not testify that he had any knowledge what any packages he had ever seen other passengers carry contained. Upon his evidence no inference or conclusion can be drawn, either by the court or by a jury, with any reasonable degree of proof, that any packages carried by other passengers were such in their character as were at all prohibited the passenger in the exercise of his common law right. For aught that appears in the evidence in the case, they may have been packages of articles intended for personal use on the journey or to accomplish the object thereof.

So far as the establishment of a custom is concerned, the evidence entirely fails to establish it. It is but necessary to consider, fundamentally, the necessary requisites of a legal custom controlling a contract to determine that none of its elements exist in this case. Whatever the practice or usage contained in the evidence, it did not attain the force and effect of what is known as a legal custom, which engrafts itself into a contract and controls the rights of the parties thereto.

If it is undertaken to distinguish between what is known as a legal custom and what is known as a usage or practice, the same difficulty in relation to the sufficiency of the evidence arises.

The plaintiff relies upon a general usage or a general practice to establish the attitude and acquiescence of the defendant company upon which he must rely in order to sustain his right to carry this package of merchandise with him. If he fails in this proof, he fails in this action, because the case was tried upon the idea that acquiescence in a general usage or

practice implied a general regulation which controlled the rights of the company in respect to all other passengers as well as to himself.

The plaintiff was bound to establish such a general usage or practice by a preponderance of proof in order to succeed in a recovery. The question is whether he has presented such facts, such evidence as warranted the trial court in submitting the case to the jury to ascertain whether the usage or practice required had been established. It is remembered in this connection that the rule is that where the question is one of fair dispute the jury must determine it.

The conclusion has been reached that the proof of the usage or practice is not such that under the rules of law the question of its existence could be submitted to the jury.

His evidence is not at all supplemented by other evidence, either positive or circumstantial.

There does not appear in the case any evidence touching the existence of such a general usage, either so general that the acquiescence of the defendant could be presumed, nor any facts of acquiescence on the part of its officers, agents or servants, and nothing to show any actual knowledge on their part. Of this class of evidence the case is entirely barren. There are no facts and circumstances which would in the slightest tend to show any knowledge on the part of the defendant company or its agents. Such evidence is quite material when the establishment of a usage is insisted upon. His testimony shows that he was not a frequent passenger. Sometimes he would go once a week, sometimes twice a week, and sometimes not for a month at a time, and he testifies to no acts save his own which have in the slightest any tendency to establish a usage. Whatever the facts may be, the evidence is barren of any which were not of his own creation, and he admits that he is ignorant of any facts which go to prove that anyone but himself ever carried any packages of merchandise in the passenger cars of the defendant company, and so far as any express knowledge or acquiescence is concerned the case is entirely silent. His own evidence is devoid

of facts which even tend to exhibit the usage insisted upon, and an examination of his evidence shows that it relates to his own acts exclusively. They do not establish the usage or practice upon which he could rely alike with other passengers as establishing a regulation alike applicable to all.

Whether there had existed in his own conduct theretofore, as a passenger, such a practice or usage applicable to him alone with the knowledge of the company, or its servants regulating such matters, as would estop the company from objecting to his carriage of these packages and from excluding him from the cars with such packages until after reasonable notice to him to discontinue such practice, is not the question at all, and no opinion is intended to be expressed upon that subject. Neither is it intended to express any opinion upon the question of whether such a usage had grown up of allowing the carrying of packages without requiring passengers to disclose whether they contained such articles as were prohibited by the ordinary common law contract of carriage, and thus the defendant be prevented from excluding the passenger refusing to so disclose until reasonable notice of the rescission of such custom. These are not the questions raised or discussed, nor were such usages insisted upon as a right of recovery. The insistment was that a general usage had been established which implied acquiescence by the defendant company and which gave rise to a general regulation alike applicable to all passengers to allow the carriage of packages of merchandise with them on their journey in the passenger cars.

The usage to be made a part of this contract of carriage must be established by plain and explicit evidence. *Steward et al.* v. *Scudder,* 4 *Zab.* 96, 101. In the case of *Re Schooner Reside,* 2 *Sumn.* 567, Justice Story says: "I own myself no friend to the almost indiscriminate habit of late years of setting up usages or customs in almost all kinds of business and trade to control, vary or annul the general liabilities of parties under the common law, as well as under the commercial law. It has long appeared to me that there is no small danger in admitting such loose and inconclusive usages or

customs, often unknown to the parties and always liable to great misunderstandings and misinterpretings and abuses, to outweigh the well-known and well-settled principles of law, and I rejoice to find that of late years the courts of law, both in England and America, have been disposed to narrow the limits and operation of such usages and customs, and to discountenance any further extension of them."

In *Wood* v. *Wood,* 1 *Car. & P.* 59, it was held that a usage to be binding must be certain, uniform and notorious, so that it must have been known to the parties. *Sewell* v. *Corporation, Id.* 392; *Stewart et al.* v. *Scudder,* 4 *Zab.* 101.

Usage cannot be proved by isolated instances, but must be so certain, uniform and notorious that it must be presumed to have been understood by the parties as entering into and constituting a part of the contract. *Cope* v. *Dodd,* 1 *Harris (Pa.)* 33; *Nichols* v. *De Wolf,* 1 *R. I.* 277.

The contract by the common law was just as explicit in its terms as if it had been expressed in writing, and the evidence of usage to modify it must show it to be a general one in respect to the business or matter in which it is invoked. *Barton* v. *McKelway,* 2 *Zab.* 165.

Whatever the usage or practice which will control, or however long a time existed, the proof of it must be clear and explicit, and it must be, and is to be, clearly distinguished from mere acts of accommodation. Many things are done in the course of trade by way of favor which cannot be held to constitute usage entering into contracts of the parties. The fact that such acts have constantly been done, not in obedience to duty or contract, but as matter of form, cannot compel their continuance. 27 *Am. & Eng. Encycl. L., tit.* "*Usages and Customs,*" 717, and cases cited; *Citizens' Bank* v. *Grafflin,* 31 *Md.* 507; *Metcalf* v. *Weld,* 14 *Gray* 210.

A habit of particular person or persons does not of itself constitute use. *Ibid.*

And they are to be strictly construed. *Ibid.*

They must be of such generality and publicity in the line

of business that the parties sought to be held would be presumed to have knowledge and acquiescence.

Proof of usage involves questions both of law and fact. It is a question of law what is sufficient usage to bind the parties, that is to say, for how long a time, at what places, and with what degree of uniformity it must have been observed.

If the facts be disputed, then they become a matter for the jury, but, being undisputed, a given state of facts being found, it becomes a question of law for the court to determine whether such a usage as claimed existed and its binding force upon the parties. Under such circumstances, it cannot be left to the jury to determine whether the usage existed or what operation or force must be given to it. 27 *Am. & Eng. Encycl. L.* 732, and cases cited.

In this case the facts as testified to by the plaintiff, the only witness in this respect, convinces beyond question that no usage existed on the part of the passengers to carry packages of merchandise with them in the cars, that is, such packages as, under the common law, they had no right to carry. The facts testified to did not constitute a usage or practice, and were such as that knowledge could not be inferred on the part of the defendant's officers and agents that such packages were being carried as a practice by the passengers, or as a usage, by the passengers. No acquiescence is established. I think upon that subject the case is barren of evidence or proof. The whole case is before the court, and the evidence in behalf of the defendant in nowise aids the defective proof of the plaintiff.

The elements of proof in this respect were entirely lacking, and the cause should not have been submitted to the jury. The motion to nonsuit should have prevailed, and for this reason there must be a reversal.

Upon the undisputed independent proof of the defendant in defence of the action, several important questions have been raised and discussed, but they have not been considered.

The judgment must be reversed and a *venire de novo* awarded.