## Employers' Fire Insurance Company *v.* Consolidated Garage and Sales Company et al.

[No. 12,532.   Filed March 11, 1927.]

1. BAILMENT.—*Failure of bailee to return goods to bailor, on demand, makes prima facie case of negligence.*—Where the bailor of goods has shown that they were received in good condition by the bailee and were not returned to the bailor on demand, he has made a *prima facie* case of negligence against the bailee, and the latter must show that the loss or damage was caused without his fault.   p. 681.

2. BAILMENT.—*To overcome prima facie case of negligence by bailee, shown by failure to return goods on demand, he must show loss was without his fault.*—In order to overcome a *prima facie* case of negligence shown by bailee's failure to return to bailor, on demand, property received by bailee in good condition, it is not sufficient for the bailee to show that the goods have been stolen, burned or otherwise destroyed, but he must prove that the theft, loss or damage was occasioned without his fault.   p. 681.

3. INSURANCE.—*Insurer could recover from garage keeper, after paying, insured for loss of car, where garage keeper's employee took car from garage and negligently destroyed it, without proving technical larceny.*—Where an employee of a garage in which the owner stored his car, without authority from any one, took the car out and negligently wrecked and destroyed it, an insurer of the car against theft, having paid the owner for the loss and taken an assignment of the owner's claim against the garage owner, could recover for the negligence without showing a technical larceny of the car.   p. 682.

4. ASSIGNMENTS.—*Owner of car could assign his right of action against garage owner whose employee took car out of garage*

*and wrecked it.*—The owner of an automobile stored in a garage and taken therefrom by a garage employee, who negligently wrecked and destroyed it, could assign and transfer his right of action against the owner of the garage.   p. 682.

5.   INSURANCE.—*Complaint by insurer of car for wrongful taking and wrecking same by defendant's employee held not to charge larcenous taking, although it used word "theft" in referring to act of employee.*—After an employee of a storage garage, without authority from any one, took a stored car out and negligently wrecked and destroyed it, an insurer of the car against theft, who had paid the owner for his loss took an assignment of the owner's right of action against the garage keeper, and brought an action against the latter to recover the amount paid out.   Its complaint did not charge a larcenous taking of the automobile where it alleged the facts showing merely a wrongful taking, although it referred to the act of the employee as "theft," in view of §2460 Burns 1926, defining the offense of "vehicle taking," and §2462 Burns 1926, making it a criminal offense to take possession of another's vehicle and to drive or operate it without the owner's consent.   p. 682.

6.   BAILMENT.—*Bailee liable for negligence of his employee.*—A bailee of property whose duty it is to guard and protect the bailed property is liable for the negligence of his employee to whom he delegates that duty.   p. 686.

7.   INSURANCE.—*Insurer suing as assignee to recover amount paid for loss of car by reason of negligence of garage owner's employee not required to show loss was covered by insurance policy.*—In an action by an insurance company as the assignee of the owner of a car to recover from a garage keeper the amount paid by it because of the destruction thereof by the garage keeper's employee, who took the car out of the garage and wrecked it, it was unimportant to the defendant whether the insurance policy covered the loss of the automobile, that being a question for the insurer and the owner to settle.   p. 688.

8.   INSURANCE.—*Insurance company may recover from garage keeper for negligent destruction of car where it has paid insured's loss and taken assignment of his cause of action.*—An insurance company, having paid the insured's loss by reason of the negligent destruction of an insured automobile by a garage keeper and taken an assignment of the owner's cause of action, may maintain an action thereon without alleging or proving the issuance of the policy or the payment of the loss to the insured, it being necessary only to allege and prove the facts showing a cause of action in favor of the insured and the assignment of such cause of action to the plaintiff.   p. 688.

9. LIVERY STABLES AND GARAGES.—*Evidence showing 'garage keeper's inability to return stored car to owner made prima facie showing, of negligence and required former to produce evidence to overcome such prima facie case.*—In an action by an insurance company against a garage owner to recover the amount paid for the loss of a stored car which was taken from the garage by an employee and wrecked and destroyed, a show-ing. of these facts and the resulting inability of the garage keeper to return the car to the owner made out a *prima facie* case of negligence on the part of the garage keeper, and the burden was on him to produce sufficient evidence to overcome the *prima facie* case made by the plaintiff.    p. 689.

10. LIVERY STABLES AND GARAGES.—*Verdict for 'garage owner held not sustained by sufficient evidence where stored car was taken, out by employee and wrecked.*—In an action by an insurance company against a garage owner to recover the amount paid for the loss of an insured car which was taken from the garage by an employee and wrecked and destroyed, a verdict for the defendant on the theory that he was not guilty of any negligence was not sustained by the evidence where the night-man in charge of the garage went out for his lunch, in violation of his orders, leaving an irresponsible car washer in charge of the garage, who took the car from the garage and wrecked it, although the garage owner had no notice or occasion to suspect that his employees would resort to any improper use of the stored cars.    p. 689.

11. LIVERY STABLES AND GARAGES.—*Negligence of nightman in charge of storage 'garage is chargeable to 'garage owner.*—The act of a nightman in charge of a storage garage in going out for his lunch, in violation of orders, and leaving an irresponsible car washer in charge of the garage was chargeable to the garage owner, and constituted negligence for which he was liable.    p. 690.

12. PLEADING.—*Word "theft" in a pleading may be qualified by the context to show nontechnical use.*—Such words as "steal," "rob" and "theft" are frequently qualified by the other language in a pleading so as to show that they were not used in their technical sense.    p. 691.

From Marion Superior Court (A 23,161); *Sidney S. Miller,* Judge.

Action by the Employers' Fire Insurance Company against the Consolidated Garage and Sales Company and others. From a judgment for defendants, the plaintiff appeals. *Reversed.* By the court in banc.

*James W. Fesler, Harvey J. Elam, Howard S. Young* and *Irving M. Fauvre,* for appellant.

*J. J. M. LaFollette* and *C. K. McCormack,* for appellees.

McMahan, C. J.—Charles Martindale was the owner of an automobile which he stored with the Consolidated Garage and Sales Company, hereafter referred to as "the sales company," and, while it was so stored, an employee of that company, without the knowledge or consent of the owner, wrongfully took it out of the garage for his personal use and pleasure and wrecked it. At the time, Martindale had a policy of theft insurance with appellant, the Employers' Fire Insurance Company. The insurance company paid the loss to the insured, and took an assignment from him of his right of action against the sales company, and brought this action to recover from the sales company the amount of the damages paid by it, the insured being made a defendant to answer as to his interests. The sales company filed an answer of general denial, and the insured filed a disclaimer. Trial by jury and a judgment for the defendants; hence this appeal. Appellant contends the court erred: (1) In giving instruction No. 8; (2) that the verdict is contrary to law; and (3) that the verdict is not sustained by sufficient evidence.

The complaint alleges the ownership of the automobile by Martindale, the storage of the same with the sales company and its undertaking to look after and protect it against theft and other damage; that an employee of the sales company, who was employed to look after automobiles stored with the company, and who was charged with protecting the automobile from theft and damage, while he was on duty as such employee, wrongfully discharged his duty by driving the automobile out of the garage where it was stored and out into

the country; that he negligently and carelessly handled the same so that it was wrecked and destroyed; that prior thereto, appellant had issued to Martindale a policy of insurance insuring him against theft of the automobile; that Martindale made claim to the insurance company for loss of the automobile by reason of theft; that appellant settled the claim by paying the insured $1,800 and took from him a written assignment of whatever right he had against any one arising out of or connected with the "aforesaid theft," and authorized appellant to take any action deemed necessary to protect its said right.

The automobile in question was stored in the garage of the sales company for compensation, and on a night while it was so stored, an employee of the sales company, without right, and without knowledge of his employer or Martindale, and in violation of the contract for storage, took the automobile out of the garage where it was stored and drove it out into the country where it was wrecked and greatly damaged.

The insured, under date of September 15, 1923, made proof of his loss, in which he stated the automobile had been stolen from the garage by an employee of the sales company and while in the possession of the thief had been wrecked and destroyed, and that he thereby transferred, assigned and set over unto the insurer "all rights, title, and interest in said automobile." On the reverse side of this proof of loss, there is a "Subrogation Receipt," acknowledging receipt of $1,800 from the insurance company in full settlement for damage to the automobile "by reason of theft" and stating that the insured, in consideration of such payment, assigned and transferred to appellant all claims and demands of the insured against the sales company and any other person or persons arising from or connected with such loss or damage. And, on the same day, the insured also

executed a written release, whereby he released and discharged appellant from all damages resulting from the "theft" of his automobile out of appellee's garage and further assigned and transferred to appellant all the rights he had against any person or corporation arising out of or in any way connected with the "aforesaid theft and damage," and authorized appellant to take any action necessary in its own name or in the name of Martindale.

Appellant, at the proper time and manner, requested the court to give the jury three instructions numbered 2, 3 and 4, to the effect that if the jury believed the automobile had been "taken" from the garage by an employee of the sales company and by him wrecked, and that such employee was under a general duty to look after cars in the garage and see that they were taken only by the proper people, appellee would be liable for the act of such employee in wrecking the automobile, even though, when he took the automobile, he was acting in violation of the orders of his employer. The court modified each of the three tendered instructions by striking out the word "taken" in each of them and inserting the word "stolen." The instructions as modified were then given by the court and numbered 5, 6 and 7.

The court, on its own motion, gave instruction No. 8, of which complaint is made, and which instruction is as follows:

"I instruct you that plaintiff's complaint is drawn on the theory that one of the defendant Consolidated Garage and Sales Company's employees breached the contract to properly care for defendant Martindale's automobile by wrongfully stealing said automobile. The law of theft, as defined by the statute of this state, and applying to this case, is as follows: 'Whoever feloniously steals, takes and carries, leads or drives away

the personal goods of another of the value of $25 or upwards is guilty of grand larceny.' It is, therefore, a question of fact for you to determine whether the acts complained of as causing the breach of the contract herein constituted the crime of larceny. If you find from a fair preponderance of the evidence that defendant's agent stole said automobile and find for plaintiff on the other material allegations of plaintiff's complaint, then your verdict should be for the plaintiff."

Appellant's first contention is that it was not required to prove a technical theft of the automobile; that the question as to whether the policy covered the loss was a question exclusively between the insurer and the insured, a question in which the sales company was not interested, and in which it had nothing to do; and that the assignment transferred to the insurance company any and all rights of action Martindale had against the sales company. Appellee, on the other hand, contends that, in order to recover, it was necessary for appellant to prove there had been an actual theft of the automobile by the employee of the sales company.

In *Medes* v. *Hornbach* (1925), 6 Fed. (2d) 711, Hornbach operated a garage for the storage of automobiles. Medes rented space and left his car in defendant's charge. The car was taken out by an employee of the defendant and damaged. The defense was that the employee in taking the car was acting without his employment, without the knowledge or consent of the defendant and in violation of his orders. The trial court directed a verdict for the defendant. In reversing the judgment, the court said: "It is the duty in general of one operating a garage in which automobiles are kept in storage for pay to exercise ordinary care by the employment of trustworthy servants and otherwise for the safe-keeping of the cars in his charge. On the other hand, he is not an insurer of their safety, and if a stored

car is stolen from the garage without negligence upon his part, he is not in general liable to the owner for the loss. This rule likewise applies, should the thief be an employee of the person operating the garage, if the theft occurs without the connivance or negligence of the employer. Nevertheless, when the proof establishes that a stored car, while in charge of the garage keeper, has been taken out and used by an employee of the latter, without the knowledge or consent of the owner, and has been damaged by such use, such proof, standing alone and unexplained, is sufficient to make out a *prima facie* case for a recovery by the plaintiff." Citing, *Knights* v. *Piella* (1896), 111 Mich. 9, 69 N. W. 92, 66 Am. St. 375; *Hadley* v. *Orchard* (1898), 77 Mo. App. 141; *Claflin* v. *Meyer* (1878), 75 N. Y. 260, 31 Am. Rep. 467; *Staley* v. *Colony Union Gin Co.* (1914), 163 S. W. (Tex. Civ. App.) 381; *Colburn* v. *Washington State Art Assn.* (1914), 80 Wash. 662, 141 Pac. 1153, L. R. A. 1915A 594; *Travelers Indemnity Co.* v. *Fawkes* (1913), 120 Minn. 353, 139 N. W. 703, 45 L. R. A. (N. S.) 331; *Handley* v. *O'Gorman* (1923), 45 R. I. 242, 121 Atl. 399.

In *Miles* v. *International Hotel Co.* (1919), 289 Ill. 320, 124 N. E. 599, the court said: "The weight of modern authority holds the rule to be that where the bailor has shown that the goods were received in good condition by the bailee and were not returned to the bailor on demand the bailor has made out a case of *prima facie* negligence against the bailee, and the bailee must show that the loss or damage was caused without his fault. * * * The effect of this rule is, not to shift the burden of proof from plaintiff to defendant but simply the burden of proceeding." And such *prima facie* case is not overcome by a showing on the part of the bailee that the goods have been burned, or otherwise destroyed or stolen. Before

such *prima facie* case can be said to be overcome, the bailee must further produce evidence tending to prove that the loss, damage or theft was occasioned without his fault.    This rule has been applied to garage keepers who failed to return automobiles on demand: *Mehesy* v. *Mission Garage* (1922), 60 Cal. App. 275, 212 Pac. 643; *Tatro* v. *Baker-Fisk-Hugill Co.* (1921), 215 Mich. 623, 184 N. W. 449; *Blackburn* v. *Depoyster* (1925), 209 Ky. 105, 272 S. W. 398; *E. R. Parker Motor Co.* v. *Spiegal* (1925), 33 Ga. App. 795, 127 S. E. 797; *Southern Garage Co.* v. *Brown* (1914), 187 Ala. 484, 65 So. 400.

We cannot concur in appellee's contention.   Appellant was not required to prove the crime of larceny as defined in instruction No. 8.    The complaint does not allege a larcenous taking of the automobile by appellee's employee.    The charge is that such employee wrongfully drove the automobile out of the garage, out into the country and, through his negligence, wrecked and destroyed it.    True, appellant, in alleging the assignment to it by the insured of all rights which he had arising out of or in any way connected with the act of the employee of appellee in relation to the driving and wrecking of the automobile, refers to the same as "the aforesaid theft."    But if the word "theft" is to be given a technical meaning, there was no "aforesaid theft" alleged or referred to in the complaint giving Martindale any right which was or could be assignable.    Any and all rights of action possessed by Martindale against the sales company or its employees arising out of or in any way connected with the act of the employee in taking the automobile out of the garage without the consent of the owner was assignable, and was assigned to appellant, and this included the right to sue for the damage occasioned by the wrecking of the car.   The "aforesaid theft" will and should

be construed the same as if the words "aforesaid taking" had been used.    The section of the statute quoted in instruction No. 8, in which the court defines grand larceny, is not the only statute making it a crime to take an automobile.    Section 2460 Burns 1926, Acts 1921 p. 494, provides that, whoever unlawfully, without the consent of the owner, takes, hauls, carries or drives away certain vehicles, including an automobile, shall be guilty of the crime of "vehicle taking."    And a person who violates this statute and is thereafter convicted and punished in accordance with its provisions may very properly be said to be guilty of *stealing* an automobile, and, in referring to his act, it would be quite proper to say he *stole* an automobile, or that, in so doing, he committed a *theft*.    We also have another statute making it a crime for any one to take possession or to assume control of any vehicle of any character which is the property of another and to use, drive or operate the same without the consent of the owner.    §2462 Burns 1926, Acts 1913 p. 942.    The complaint clearly and sufficiently alleges, and the evidence without any doubt shows, an unlawful taking of the automobile as defined by this section of the statute.    If the employee in question had been on trial for a violation of this statute, the undisputed evidence would be sufficient to sustain a verdict finding him guilty.    It was this kind of a taking that was alleged in the complaint and which was later referred to by the rather inappropriate expression "aforesaid theft."    The court erred in construing the complaint as charging the technical crime of larceny, in giving an instruction defining the crime of grand larceny, and in telling the jury its verdict "must be for the defendant" if it failed to find the employee in question "stole" the automobile.    The court by this instruction told the jury there could be no recovery unless the employee in taking the automobile out of the

garage committed the crime of larceny as defined in the instruction. This was error.

In connection with appellant's contentions that the verdict of the jury is not sustained by sufficient evidence, and that it is contrary to law, appellant and appellee have discussed the law relative to the duties and liabilities of a public garage keeper who stores automobiles for hire. In view of the fact that this cause must be reversed and remanded for a new trial, we deem it proper and advisable to consider the contentions of the parties in this behalf.

Appellant's contentions are stated in its brief as follows: "(1) When a garage keeper undertakes to store cars and provide reasonable protection therefor, and then leaves a single employee in charge, the garage keeper cannot say that such employee is not charged with the duty of protecting such car. (2) Where an employer is under a contract duty to furnish protection and delegates the duty to an employee who is himself guilty of causing damage instead of furnishing protection, the employer is liable, even though the employee is acting contrary to orders. (3) Proof that the automobile was placed in the care of the defendant in good condition and was delivered in damaged condition when called for is sufficient to make a prima facie case and place upon the defendant the burden of explaining the damage in a way inconsistent with liability, and no sufficient explanation was given in this case."

Appellee says: "In a case of bailment for hire the bailee is liable only for the exercise of ordinary care. He is in no sense an insurer. The measure of care called for by the foregoing rule is such as men in general, of common prudence, ordinarily bestow upon their own property similarly situated."

Appellee cites and relies solely on the case of *Firemen's Fund Ins. Co.* v. *Schreiber* (1912), 150 Wis. 42,

135 N. W. 707, 45 L. R. A. (N. S.) 314; Ann. Cas. 1913E 823, where a nightman finished his work about 1:30 a. m. and went out to get a lunch, intending to return and permanently close the place for the night. While out for lunch, he met an acquaintance, and they conceived the idea of taking the machine in question and taking a ride. They took the machine and damaged it. It was there held that the employee, in taking the car out of the garage, so far stepped aside and departed from the scope of his employment and effected a personal purpose of his own, as to sever the connection between him and his employer, and thus rendering him alone liable, and that, under such circumstances, the employer was not liable. The strength of this case as an authority is greatly weakened by the fact that three of the seven judges dissented. And, so far as we are advised, it has never been cited with approval or followed by any appellate tribunal. The courts of California, Illinois, New Jersey, Pennsylvania and District of Columbia have refused to follow it. See *Muehlebach* v. *Paso Robles Springs Hotel* (1924), 65 Cal. App. 634, 225 Pac. 23; *Evans* v. *Williams* (1924), 232 Ill. App. 439; *Corbett* v. *Smeraldo* (1917), 91 N. J. Law 29, 102 Atl. 889; *Vannatta* v. *Tolliver* (1923), 82 Pa. Sup. Ct. 546; *Medes* v. *Hornbach, supra.*

In *Muehlebach* v. *Paso Robles Springs Hotel, supra,* where valuables deposited in the hotel safe by a guest were stolen by a servant charged with safely guarding them, and who had access thereto, the hotel keeper, being a bailee for hire, was held liable therefor under the rule that if a duty of the master be violated, he is liable therefor, whether he or his servant was guilty of the breach, even though the servant acted contrary to instructions, without his master's consent, fraudulently or criminally.

In *Evans* v. *Williams, supra,* an employee of the de-

fendant, and in sole charge of the garage at the time, took the plaintiff's car out for a "joy-ride" and wrecked it. It was contended there, as in the instant case, that when the employee left the garage and wrongfully took the car for his own use, he "instantly and automatically" ceased to be the servant of the defendant because he was engaged in an unauthorized enterprise entirely outside the scope of his employment. The court, after referring to *Firemen's Fund Ins. Co.* v. *Schreiber, supra,* said: "In bailment the contract is in its nature a direct and personal obligation by which the bailee undertakes personally to keep safely the property committed to his care. It is an obligation from which he cannot relieve himself without the other's consent. * * * The actual work of guarding the property may be delegated to an employee, and in the customary way of conducting many businesses this must be done during certain hours of the day, but the bailee is not thereby relieved from the personal obligation of his contract. An employee to whom such duty is delegated stands in the place of his employer and any negligence of this employee in protecting the property is the negligence of the employer, who can be made to respond in damages caused thereby. Any other rule would have a tendency to tempt a bailee to lessen his personal liability for damages by delegating to irresponsible servants the care of the property. This would be unjust to the bailor as increasing the risk to the property and decreasing his chances of obtaining adequate compensation for damages thereto. The primary and essential object of this contract of bailment was the safety of the automobile, and no rule of law should tend to diminish this by putting a premium on lack of personal attention." This statement of the law is quite applicable to the facts in the instant case and

meets with our approval. See, also, *Smith* v. *Bailey* (1917), 195 Mich. 105, 161 N. W. 822.

In *Corbett* v. *Smeraldo, supra,* an automobile was stored with the owner of a garage at an agreed price for care and storage. A nightman in charge of the garage took the automobile out for his own purposes and damaged it. *Held,* there was a breach of the contract to store, and that the plaintiff was entitled to recover. "Storage," said the court, "involved keeping the automobile there and not permitting it to go out without the plaintiff's authority. If the defendant chose to intrust that duty to his nightman, he was liable, not because the nightman was negligent, but because the defendant himself had been guilty of a breach of his contract of storage. * * * There was a breach of the contract to store as soon the automobile was taken out of the garage." The court, commenting on the Wisconsin case, said its authority was shaken by the dissent of three judges, and called attention to the fact that that case was founded on the tort of the servant and did not involve the terms of the contract.

In *Vannatta* v. *Tolliver, supra,* the night watchman permitted a car to be taken out of a garage without the knowledge or consent either of the owner of the car or of the garage keeper, and the latter was held liable for damages to the car. Quoting from *McLain* v. *Automobile Co.* (1912), 72 W. Va. 738, 79 S. E. 731, 48 L. R. A. (N. S.) 561, Ann. Cas. 1915D 956, the court said: "The garage keeper cannot leave the garage solely in the hands of a servant and then say that his negligence in letting a car out is beyond the scope of his employment. That would leave the garage without any one to protect cars; in itself it would be want of reasonable care." The court also quoted from Sherman & Redfield, Law of Negligence (6th ed.), §154, where the

authors said: "Where the servant, by his wrongful act, deprives the plaintiff of the benefit of some act which it was the duty of the master to perform, and performance of which is, in whole or in part, delegated to that servant, the master is responsible for the servant's act, no matter how wilful, malicious or unauthorized it may be."

Whether the insurance policy issued by appellant covered the loss of the automobile was a question for appellant and the owner of the automobile to settle. 7, 8. With that question, appellee is not interested and has nothing to say. *Potomac Ins. Co.* v. *Nickson* (1924), 64 Utah 395, 231 Pac. 445, 42 A. L. R. 128; *Southern Garage Co.* v. *Brown, supra.* Indeed, it was not necessary for appellant to allege or prove the issuance of the policy of insurance or the payment of the loss to the insured. The only facts appellant was required to allege and prove were facts showing a cause of action in favor of the insured and an assignment of such cause of action to appellant. If the cause of action was founded on the equitable doctrine of substitution or subrogation, the rule would be different.

In *Potomac Ins. Co.* v. *Nickson, supra,* where a garage keeper who had stored an automobile for hire gave a claim check therefor, and afterwards delivered it to a wrong person, the court held: (1) Having violated the contract of bailment he was guilty of conversion thereof, regardless of negligence; (2) that the cause of action was assignable; and (3) the fact that the insurance company paid the owner of the automobile damages sustained while in the hands of the thief to whom the garage keeper delivered it, was liable only for theft, and not for misdelivery, did not affect the right of the insurance company to recover from the garage keeper who was protected against paying more than one claimant by the assignment of right of action

by the insured, and by fact that insurer paid loss to owner and was subrogated to his right. This is a well-considered case, and reviews the authorities dealing with the question of misdelivery.

Appellee, in support of its contention that the evidence is sufficient to sustain a finding that it was not guilty of any negligence, says: "There was nothing to show that the managers of the garage had any notice or occasion to suspect that their employees would resort to any unwarranted use of the cars left in the garage." The answer to this statement is, it assumes the burden was on appellant to prove appellee had some notice or occasion to suspect their employees might or would resort to some improper use of the automobile. When appellant showed a failure to return the car, it made out a *prima facie* case, and the burden was on appellee to go on with the evidence and produce sufficient evidence to overcome the *prima facie* case in favor of appellant.

On the night when the car in question was taken out of the garage, the night force consisted of two men, Breem and Woodson. Breem was the nightman in charge of the garage and Woodson was a car washer. Both were under instructions to bring their lunch with them and to remain in the garage all night. Woodson was not expected to be there alone. The president and general manager of the sales company testified, in part, as follows: "At the time it was taken from the garage by Woodson, Breem was the nightman in charge and he had gone to his midnight lunch. When he came back he stepped into the office and was in there a few minutes when Woodson came and told him he was going out to his lunch. He went out the back way. Breem went down the garage a little and noticed this stall where Martindale's car was

parked was vacant and he says Woodson could not have taken the car from that stall after he, Breem, came back, because he would have heard the motor start up, but it could have gone out of there while he was at lunch. I do not know where Woodson is now." He also stated that Woodson was not expected to be in the garage alone. Warrants were issued for the arrest of Woodson for vehicle taking, grand larceny and unlawful possession, but he has never been found or arrested. There is no other evidence in the record relating to this question, and instead of meeting and overcoming the *prima facie* case made by appellant, it tends strongly to prove that the nightman Breem was guilty of negligence in going out for his lunch in violation of his orders and in leaving the colored car-washer in the garage alone, when, as the president of appellee says, he was not expected to be there alone. And this prompts the question: Why was he not expected to be there alone? It would seem as if appellee should be required to answer this question satisfactorily before being held not negligent. The time has not yet arrived when a public garage keeper can leave an unknown, irresponsible "fly-by-night" employee charged with the duty of protecting automobiles in storage, in charge of his garage, and then be held not liable for the act of such an employee in wrongfully or unlawfully taking cars out, even though it be for nothing more than a joy-ride.

It would seem that the owner of a public garage who gives an unknown and irresponsible employee, like Woodson, the opportunity and means of taking the automobiles of customers out of the garage for his personal use and pleasure, should, as a matter of law, be held to be guilty of negligence. And in the instant case, it will not be a sufficient answer for appellee to say it had a responsible nightman in charge

of its garage, when the evidence shows that the night-man, when he went out for his lunch, left the one who took the automobile alone in the garage. The act of the nightman in leaving Woodson alone in the garage is chargeable to appellee, and it must assume the responsibility.

Referring again to the expression "aforesaid theft" as used in the complaint, it is well settled that such words as "steal," "rob," and "theft" are frequently qualified by the rest of the language used so as to show they were not used in their technical sense. *Randall* v. *Evening News Assn.* (1894), 101 Mich. 561, 60 N. W. 301; *Darling* v. *Clement* (1897), 69 Vt. 292, 37 Atl. 779.

We hold the court erred in giving instruction No. 8, and that the verdict is not sustained by sufficient evidence. Judgment reversed, with directions to sustain appellant's motion for a new trial and for further proceedings consistent with this opinion.

Dausman, J., absent.