## CHECKPOINT FOREIGN CAR SERVICE, INC. *v.* SWEENEY

[No. 324, September Term, 1967.]

*Decided May 31, 1968.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SINGLEY, JJ.

*Vincent J. Femia* for appellant.

*James B. Berry, Jr.,* for appellee.

FINAN, J., delivered the opinion of the Court.

On March 22, 1966, Sweeney, the appellee, purchased a previously owned 1963 Austin Healy Sprite from a large dealer

in foreign automobiles, paying $900. The testimony reveals that the car was in good condition at the time of its purchase, that the appellee drove it between 5,000 and 6,000 miles, that he did not participate in any racing activities with it and that it was not involved in any accident. In addition, new tires were put on the car and Sweeney's friend, Kennicott, performed both a valve job and a motor tune-up on it.

In September of that year, prior to leaving for military service in Texas, Sweeney placed the automobile in the possession of Kennicott, instructing him to have the brakes repaired. After getting several estimates for brake repairs, Kennicott delivered the sports car to Checkpoint, the appellant, on the evening of October 17, 1966, after Checkpoint had closed for the day. Pursuant to instructions previously given Kennicott over the phone by Checkpoint, Kennicott parked the car on Checkpoint's lot and delivered the keys to an attendant of the service station adjoining Checkpoint. There is evidence that the lot in which Kennicott parked Sweeney's car is at the main intersection in District Heights and is well lit. The car was missing from Checkpoint's premises when Kennicott returned two days later to retrieve it, and the appellant was thus unable to deliver the car upon demand.

Sweeney sued Checkpoint for negligent conversion of the automobile in permitting it to be stolen from its premises. The lower court denied Checkpoint's motions for directed verdict and submitted the case to the jury, which returned a verdict in favor of Sweeney for $900. The sole issue raised by the appellant is that the court below erred in permitting the jury to determine the amount of loss absent legally sufficient evidence of market value. However, we think the case was properly submitted to the jury.

This Court has held that in an action for conversion of personal property, the measure of damages is the fair market value of the property at the time of the conversion, with legal interest running to the date of the verdict. See *Saunders v. Mullinex*, 195 Md. 235, 240, 72 A. 2d 720, 722 (1950). Anyone familiar with the condition of the chattel, including its owner, is competent to testify as to its value. *Pennsylvania*

*Threshermen & Farmers' Mutual Casualty Insurance Co. v. Messenger,* 181 Md. 295, 29 A. 2d 653 (1943).

We believe that our predecessors on this Court have established the relevant facts for the jury to consider in their determination of the market value of a used automobile. In *Myers v. State,* 137 Md. 491, 113 A. 90 (1921), this Court stated:

> "There is, of course, a market for and an immense trade in used automobiles. But the present market value of such a machine depends upon such an infinite variety and number of conditions and circumstances, such as the original cost, which not only relates to some extent to its intrinsic value but affects its present value, since the cost of new parts to replace those broken or worn will be greater in a higher priced car than in one of less value; also the length of time it has been in use, the manner in which it has been used, the care taken of it, its actual condition, and the difficulty of securing new parts. Obviously, there can be no standard by which the market value of such a car can be measured with definiteness and certainty, and under such circumstances the price paid for it would be some evidence of its present value." *Id.* at 494, 113 A. at 91.

See also *Bailey v. Ford,* 151 Md. 664, 667, 135 A. 835, 836 (1927).

The instant case provides a good example for the application of the *Myers* rule. The appellee established the purchase price and the facts that it had been driven only 7 months before its disappearance, and that during that time the car was driven less than 1,000 miles a month. In addition to this evidence the jury had before it the fact that new tires had been placed on the car and substantial mechanical improvements had been made.

The witness Kennicott testified that on the day he delivered the car for brake repairs, immediately prior to the conversion, it "was in very good condition." There was certainly sufficient evidence before the jury to permit them to make an intelligent and probable estimate of the value of the car at the time it disappeared. In the case of *Gertler v. Bowling,* 202 Va. 213,

215, 116 S. E. 2d 268, 270 (1960), presenting facts very similar to the instant case, the Court said:

> "Evidence of the original cost of a used automobile is admissible on the issue as to its value at the time of loss, on the theory that the present value of a used article can be determined with a reasonable degree of certainty by taking such original cost and making due allowance for elements of depreciation. *Whitcomb v. Automobile Ins. Co.,* 167 Minn. 362, 209 N.W. 27, 28; *Tatro v. Baker-Fisk-Hugill Co.,* 215 Mich. 623, 184 N.W. 449; 5 Am. Jur., Automobiles, § 748, p. 906; Anno. 64 A.L.R. 176."

See also Vol. 6 *Blashfield's Cyclopedia of Automobile Law and Practice* § 3431 (1945) and cases cited therein.

*Judgment affirmed with costs.*