**ATLANTIC AVIATION CORPORATION,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 75–146.**

United States District Court,
D. Delaware.

June 21, 1978.

See also, D.C., 456 F.Supp. 127 and 456 F.Supp. 143.

David L. Steck, of Rawle & Henderson, Philadelphia, Pa., and Franklin S. Eyster, III, General Counsel, Atlantic Aviation Corp., Wilmington, Del., for plaintiff Atlantic Aviation Corp.

James W. Garvin, Jr., U. S. Atty., for the District of Delaware by Kent W. Walker and John X. Denney, Jr., Asst. U. S. Attys., Wilmington, Del., for defendant United States of America.

## OPINION with FINDINGS OF FACT and CONCLUSIONS OF LAW

LAYTON, Senior District Judge.

This is a consolidated action arising out of the May 16, 1974, crash of a Piper Cherokee airplane at the Wicomico County Airport near Salisbury, Maryland. Just as the plane left the ground upon take-off, it was struck in the rear by a jeep that was owned by the United States and driven by a Government employee. Before the pilot was able to land the plane safely, it plunged to the runway; the plane was destroyed and both of its occupants were killed.

Atlantic Aviation Corporation, the owner of the Piper Cherokee airplane that was destroyed in the crash, brought an action in this Court against the United States under the Federal Tort Claims Act. This action subsequently was consolidated with two wrongful death and survivorship actions brought by the widows of the two men who were killed in the crash.

Trial of these consolidated actions was bifurcated. The liability phase was tried to the Court on July 25–27, 1977. Sitting without a jury, this Court held that the Government was liable in damages to all of the plaintiffs. *Atlantic Aviation Corp. v. United States,* C.A. No. 75–146 (Consolidated) (D.Del., Oct. 27, 1977) (unpublished memorandum opinion).

On January 31, and February 1–2, 1978, a trial was conducted as to damages. Exten-

sive post-trial briefing has been completed and this case is in a posture for final disposition. I will treat each action separately and will make the appropriate findings of fact and conclusions of law in the individual cases. In addition, I will rule upon certain evidential questions which were reserved at trial for a decision at this time.

## ATLANTIC AVIATION CORP. v. UNITED STATES

Plaintiff Atlantic Aviation seeks to recover for hull loss and related damages resulting from the May 16, 1974, crash in which its Piper Cherokee airplane was destroyed.

### Evidential Rulings

Before discussing my findings of fact and conclusions of law, I will address two evidential questions which I reserved at trial for rulings at this time.

At the conclusion of its cross-examination of Edgar F. Smith, the Government moved to strike his testimony as it related to any payments made by Atlantic Aviation for certain equipment which was installed in the Piper Cherokee plane, and as it related to the amounts paid by the company to Wicomico County for the removal and storage of the plane's wreckage, and for repairs to the runway where the crash occurred. The Government argued that since documents such as cancelled checks or receipted invoices must exist which reflect these payments, it was improper for the plaintiff to attempt to prove these items of damage by the testimony of a witness.

It is noted that throughout the pre-trial proceedings in this case the Government never requested that the plaintiff produce any cancelled checks or receipts concerning these payments. Furthermore, the Government apparently has abandoned its attack upon the testimony of Mr. Smith in this regard, since it fails to raise the issue in its post-trial brief. In fact, the Government explicitly "concedes that Atlantic has proved damages of $4,902.89 for the fair market value of the loss of the avionics equipment and $475.19 for expenses paid to Wicomico County, Maryland for removal and storage of the wreckage and repairs to the runway." Opening Post-Trial Brief of the United States Respecting Damages Recoverable by Atlantic Aviation Corporation, Docket No. 63, at 3.

■ Although I view this as a withdrawal by the Government of its motion to strike, I will deny the motion on its merits.

Mr. Smith is employed by Atlantic Aviation as Director of Insurance and Risk Management. His duties include insuring all of the company assets, investigating and handling of all claims, including physical damages claims, and supervising company benefit and pension plans. Mr. Smith testified from his personal knowledge that the payments described above were made by Atlantic Aviation. Since Mr. Smith testified from personal knowledge, I will deny the Government's motion to strike his testimony.

Similarly, during its cross-examination of Edward N. Broadbelt, the Government moved to strike his testimony as it related to any payments made by Atlantic Aviation for the avionics equipment which was installed in the Piper Cherokee. Again, the Government argued that the actual payments for these items is better reflected in receipts or cancelled checks which were not introduced into evidence by the plaintiff.

Noting that the Government has conceded that the plaintiff has proved the amount of these payments, and therefore has withdrawn its motion to strike, I will deny this motion on the same grounds that I denied the previous one.

Mr. Broadbelt is the Purchasing Manager for Atlantic Aviation and is responsible for purchasing all parts and equipment used by the company and its subsidiaries, including the procurement of avionics equipment from manufacturers and suppliers. He testified from personal knowledge concerning the cost of these items. The Government's motion to strike his testimony regarding the amounts paid by Atlantic Aviation for the avionics equipment installed in the Piper Cherokee is groundless, therefore, and will be denied.

Plaintiff's exhibits, PAA 1–8, were admitted at trial subject to a further motion to strike by the Government at the end of the case. No such motion was made at the close of Atlantic Aviation's case at trial, nor has such a motion been raised post-trial. Since the Government's other motions to strike have been denied, PAA 1–8 are admitted unconditionally.

*Findings of Fact and Conclusions of Law*

On May 16, 1974, the subject aircraft, Piper Cherokee N56624, was owned by the plaintiff, Atlantic Aviation Corporation. The plane was totally destroyed in the May 16, 1974, crash which occurred at the Wicomico County Airport near Salisbury, Maryland. The sole proximate cause of the destruction of plaintiff's aircraft was the negligent conduct of the driver of the jeep that collided with the plane as it was taking off. The jeep was owned by the United States and the driver was an employee of the Government who was acting within the scope of his employment when the accident occurred. This Court already has concluded that defendant United States is liable in damages to plaintiff Atlantic Aviation for the destruction of the plane and other losses resulting from the May 16, 1974, crash. *Atlantic Aviation Corp. v. United States*, C.A. No. 74–146 (Consolidated) (D.Del., Oct. 27, 1977) (unpublished memorandum opinion).

■ Under the Federal Tort Claims Act, the United States may be held liable, in money damages, for loss of property "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). In this case, the negligent act of a Government employee, the jeep driver, caused Atlantic Aviation to lose its property, the Piper Cherokee plane. Since the accident occurred at the Wicomico County Airport near Salisbury, Maryland, the law of that state determines the nature and extent of the Government's liability to plaintiff Atlantic Aviation. *Richards v. United States*, 369 U.S. 1, 6–10, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).

The Atlantic Aviation suit comprises three claims: destruction of the Piper Cherokee aircraft and its equipment; cost of removal and storage of the wreckage, and runway repairs; and loss of use of the aircraft until a replacement was obtained.

Destruction of the Piper Cherokee N56624:

■ Under Maryland law, the rule is well-established that the measure of damages for the destruction of a chattel is the market value of the chattel at the time and place of its destruction, and this general rule is applicable to all types of chattels. *Weishaar v. Canestrale*, 241 Md. 676, 217 A.2d 525, 530 (Ct.App.1966); *Checkpoint Foreign Car Service, Inc. v. Sweeney*, 250 Md. 251, 242 A.2d 148, 149 (Ct.App.1968). In determining the fair market value of the destroyed chattel, a fact-finder should consider the length of time it had been in use, the manner in which it had been used, the care taken of it, its actual condition, and the difficulty of securing new parts. *Checkpoint Foreign Car Service, Inc., supra*, 242 A.2d at 149 (automobiles). Evidence of the original cost of the chattel is relevant to this determination, on the theory that the present value of a used article can be determined with a reasonable degree of certainty by taking into account its original cost and a due allowance for elements of depreciation. *Id.*, 242 A.2d at 150.

Atlantic Aviation acquired the Piper Cherokee N56624 new, on April 1, 1974, at a cost of $12,488. The plane was purchased for use as an instrument flight training craft at its Wilmington Flight School. Atlantic bought the aircraft from Ohio Valley Piper Sales, a division of Atlantic Central Corporation, a wholly-owned subsidiary of Atlantic Aviation.

To prepare the Piper Cherokee N56624 for use as an instrument training craft, Atlantic Aviation equipped the plane with certain avionics equipment, to wit: King

KX–170B navigation/communication radios; King KI–201C VOR Indicator; King KI–214 VOR Glideslope Indicator; King KMA–20 Audio Control System; King KR–86 Digital ADF; and King KT–78 Transponder. The work of installing the avionics equipment was begun on or about April 15, 1974, and was completed on or about May 6, 1974. The reasonable cost of the avionics equipment was $3,963.22, and the reasonable cost for the labor to install it was $939.67. The Government concedes that the plaintiff has proved these amounts satisfactorily. It is noted that the charges for labor and avionics materials are discounted figures, i. e., they have been reduced to eliminate profit, thus reflecting only actual costs plus overhead.

Taking into account the $12,488 which it paid for the Piper Cherokee N56624, and the $4,902.89 cost of the avionics equipment which was installed therein, plaintiff seeks compensation in the amount of $17,390.89, for the destruction of its plane.

The Government disputes the validity of this figure for several reasons. First, the defendant points to the intra-company acquisition of the aircraft. Since there is no evidence of the initial sales price paid by Ohio Valley Piper Sales to the manufacturer, nor any evidence of the profit made by Atlantic Central on the sale of this plane to its parent corporation, the defendant contends that the $12,488 paid by Atlantic Aviation for the Piper Cherokee N56624 is not probative of the plane's fair market value. Second, the Government argues that there is no evidence of the condition of the aircraft on the date of the crash. Finally, the Government attacks plaintiff's failure to introduce evidence either of the wholesale or retail market for a Piper Cherokee Model 140 aircraft in Salisbury, Maryland, or the Delmarva Peninsula. For these alleged deficiencies in plaintiff's proof of loss, the Government contends that Atlantic Aviation may not recover any amount for the destruction of its plane.

■ It is true, as the Government states, that if compensatory damages are to be recovered, they must be proved with reasonable certainty and may not be based upon speculation or conjecture. *Asibem Assoc., Ltd. v. Rill,* 264 Md. 272, 286 A.2d 160, 162 (Ct.App.1972); *accord, Empire Realty Co. v. Fleisher,* 269 Md. 278, 305 A.2d 144, 147 (Ct.App.1973); *Charles County Broadcasting Co. v. Meares,* 270 Md. 321, 311 A.2d 27, 34 (Ct.App.1973). Once liability has been established, however, the precise quantum of damage need not be shown with mathematical certainty and the plaintiff bears the burden only of adducing sufficient evidence from which the amount of damages can be determined on some rational basis and other than by pure speculation or conjecture. *Ass'n of Maryland Pilots v. Baltimore & Ohio Railroad Co.,* 304 F.Supp. 548, 557 (D.Md.1969).

■ Under Maryland law, the amount paid by the plaintiff for the Piper Cherokee N56624 is relevant to a determination of the fair market value of the plane at the time of its destruction. *Checkpoint Foreign Car Service, Inc. v. Sweeney,* 250 Md. 251, 242 A.2d 148, 150 (Ct.App.1968). In my view, it is irrelevant that Atlantic Aviation purchased the plane from its wholly-owned subsidiary. There is neither caselaw nor evidence of record which supports the position of the Government that the amount paid by Atlantic Aviation to Ohio Valley Piper Sales for the Piper Cherokee N56624 was unreasonable or an invalid gauge of the plane's fair market value at the time it was purchased.

■ The Government also contends that the $12,488 cost of the plane must be reduced to account for the aircraft's depreciation in value. Atlantic Aviation purchased the plane only six weeks before the crash and it had been in service only ten days at the time it was destroyed. Two weeks after the plaintiff bought it, the plane was turned over to mechanics for the installation of the avionics equipment. In view of the substantial cost of these improvements to the plane, the value of the aircraft must have increased, not decreased, between April 1, 1974, when it was acquired by the plaintiff, and May 6, 1974, when it first was put into service. It would be unreasonable

and speculative to account for depreciation during the mere ten days in which the plane was available for flying.

■ I conclude, therefore, that Atlantic Aviation is entitled to recover $17,390.89, for the destruction of the Piper Cherokee N56624 (hull loss and avionics equipment only).

Removal and Storage of the Wreckage/Repairs to the Runway:

It is undisputed that the Wicomico County Airport Commission submitted to Atlantic Aviation Corporation a bill for removal and storage of the wreckage of the Piper Cherokee N56624, and for repairs to the runway on which it crashed May 16, 1974. The total charges were $475.19, and that amount was paid by Atlantic Aviation.

The Government concedes that the plaintiff has proved its damages in this regard in the amount stated.

■ I conclude, therefore, that Atlantic Aviation is entitled to recover an additional $475.19, for the amounts it paid to the Wicomico County Airport Commission for removal and storage of the wreckage, and for repairs to the runway on which the Piper Cherokee N56624 crashed.

Loss of Use of the Plane:

Plaintiff Atlantic Aviation seeks to recover $313.20, the amount it alleges that the company lost in overhead due to the loss of the use of the Piper Cherokee N56624.

■ In computing the amount of recovery for an injury to a vehicle which was not completely destroyed as a result of the tort, the Maryland cases have recognized that the measure of damages may include a reasonable allowance for loss of use of the vehicle. *D'Ambrogi v. Unsatisfied Claim & Judgment Fund Bd.,* 269 Md. 198, 305 A.2d 136, 138 (Ct.App.1973); *Taylor v. King,* 241 Md. 50, 213 A.2d 504, 507 (Ct.App.1965). When a vehicle has been totally destroyed, however, and the owner has recovered for its full value, the general rule is that there can be no recovery for loss of the use of the vehicle. *Weishaar v. Canestrale,* 241 Md.

676, 217 A.2d 525, 530 (Ct.App.1966). An exception to this general rule has been recognized: damages can properly include an amount for expenses incurred by the owner of the destroyed vehicle in procuring a necessary substitute, or for the value of the use of such substitute until a replacement can be made. *Id., citing* Restatement, Torts § 910.

Atlantic Aviation procured a substitute plane to replace the Piper Cherokee N56624. The substitute plane was delivered on June 3, 1974, eighteen days after the crash. Based upon the average per day usage of the plane before it was destroyed, and upon the company's overhead in flying the plane, Atlantic Aviation calculates its damages for the loss of the use of the Piper Cherokee N56624 at $313.20.

There was no evidence of any expenses incurred by the plaintiff in replacing the destroyed plane. Nor was there evidence of any actual losses incurred due to the loss of the use of the plane. Although the Court of Appeals of Maryland in *Weishaar* recognized an exception to the general rule barring recovery for loss of use, that exception was strictly limited. Proof of loss of use damages will be found to be too speculative unless there is careful proof showing not only the lost possibility of profit but an actual contract or other financial arrangements for the destroyed chattel's use. *Weishaar v. Canestrale, supra,* 217 A.2d at 531 (loss of commercial truck).

■ There has been no such careful showing in this case with respect to the loss of the use of the Piper Cherokee N56624. I conclude, therefore, that the evidence of plaintiff's damages resulting from the loss of use of the Piper Cherokee N56624 is too speculative to permit an award under Maryland law.

*Conclusion*

In summary, I find that

1. The fair market value of the Piper Cherokee N56624 on May 16, 1974, was $17,390.89.

2. Atlantic Aviation Corporation paid to the Wicomico County Airport Commission a total of $475.19, for removal and storage of the wreckage of the Piper Cherokee N56624, and for repairs to the runway on which that plane crashed on May 16, 1974.

Since these losses were caused by the negligent act of an employee of the Government acting within the scope of his employment, I conclude that plaintiff Atlantic Aviation is entitled to recover from defendant United States of America, the sum of $17,866.08, with interest, plus costs.

The foregoing constitutes this Court's findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a).