SAUNDERS *v.* MULLINIX

[No. 101, October Term, 1949.]

*Decided April 19, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*John P. Saunders* in proper person.

Submitted on brief by *Jerome A. Loughran* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was instituted by John P. Saunders in the Circuit Court for Howard County against A. Robey Mullinix, trading as Daisy Garage Company, to recover for conversion of a Ford automobile. The case was removed to the Circuit Court for Baltimore County. That Court, sitting without a jury, rendered a verdict in favor of defendant. Plaintiff has appealed from the judgment entered upon the verdict.

It was shown at the trial that plaintiff bought the automobile from defendant on November 28, 1943, for $165. He also bought some gasoline and other supplies, which

brought the total bill to $178.30. He paid thereon $75 in cash and gave a promissory note for $103.30 for the balance. This note, which was signed by himself and Sarah K. Saunders, his wife, was payable 12 months after date.

Plaintiff claimed that in March, 1944, he left home on a business trip, and while he was away defendant came to his home and obtained possession of his automobile by trick and artifice. He testified that defendant induced Mrs. Saunders to let him take the automobile by telling her that he wanted to make some repairs on the motor in compliance with a guarantee he had made.

Mrs. Saunders testified that defendant appeared at the front door of her home and stated that he had come for the automobile to repair it and would return it within a few days. She gave the following account of how the car was taken: "He said he had come over after the car to fix it up because * * * the motor missed and it just ate gas. He promised to fix it without charge. He had plenty of time to fix it, he said. I didn't know whether to let him have it or not. I finally did. I told him I had to go to Mount Airy for my groceries. He said I would have it by Friday. I let him take the car. It was sitting down in front of our house. He took the car and I never saw him or spoke to him until Friday afternoon. I called him and asked him if the car was ready. * * * He said the car was not ready. He found a broken valve in it. He never did bring it back."

Mrs. Saunders further testified that defendant asked her on April 15 to bring him the new license tags for the car, but she declined to do so. She said that he also wanted her to transfer the title to him so that he could sell the car. She said that defendant declared that he would not give the car back, but was planning to sell it.

It is not disputed that defendant held the automobile in his garage from March, 1944, until March, 1945, and on March 13, 1945, he sent plaintiff a registered letter notifying him that the automobile would be sold at auction on March 24, 1945, at 3 o'clock for "storage and repair

bill." At the trial, however, he swore that he did not repair the car at all, but sold it only for storage. Defendant bought the car at the sale for the sum of $65, and later sold it for $78.

Even assuming the truth of defendant's testimony that he took the car on instructions of Mrs. Saunders, the fact remains that defendant kept the car contrary to the wishes of plaintiff and his wife. It is evident that he held it to protect his note. Defendant insisted that the note, although payable 12 months after date, was actually payable in monthly instalments. He maintained that the requirement that the note be paid in instalments was written on the note before it was signed. In any event, defendant had no valid lien on the car. He did not recover a judgment on his note. We do not consider it necessary on this appeal to pass upon the validity of the note, or to determine whether or not anything was written on it after it was signed.

Defendant sold the automobile under the Garage Lien Law. This statute provides that whenever a motor vehicle is left by the owner, or by any other person with his authority, express or implied, in the custody of any corporation, firm or individual for repair or storage, the person, firm or corporation in whose custody the motor vehicle is left shall have a lien on the motor vehicle for all charges so incurred, and may lawfully retain the same until the charges have been paid or until the lien is discharged. Code 1939, art. 63, sec. 41. The statute further provides that any corporation, firm or individual who may have a lien on any motor vehicle for repairs or storage may, if the account is due and unpaid for a period of 30 days and if the lienor still retains possession of the same, sell the motor vehicle at public sale, provided (1) that the time, place and terms of sale, together with a description of the motor vehicle, shall be inserted in one or more newspapers published in the city or county where the sale is to take place at least once each week for two successive weeks prior to the sale, and (2) that a registered notice shall be mailed at least

240

10 days prior to the sale to the owner of the motor vehicle. Code Supp. 1947, art. 63, sec. 43.

We think it is clear that defendant had no right to sell the automobile under the Garage Lien Law. Neither plaintiff nor his wife wanted the automobile stored in defendant's garage. They wanted to use the car, and defendant refused to give it up. Moreover, defendant admitted on the stand that he did not make any repairs to the automobile. It is a generally accepted rule in criminal prosecutions that one who either takes or retains the property of another without the latter's consent for a debt which he in good faith claims to be due him by the owner of the property is not guilty of larceny, because the existence of the debt or the *bona fide* belief in its existence shows a lack of felonious intent in the taking or detention of the property. But the gist of a conversion is not the acquisition of the property by the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled. Nor need there exist a forcible dispossession of property to constitute an act of the defendant a conversion. A conversion may consist of a wrongful, tortious or unlawful taking of property from the possession of another by theft, trespass, duress, or fraud and without his consent or approbation, either express or implied.

We, therefore, conclude that the judgment entered in favor of defendant should be reversed. In an action for conversion of personal property, the measure of damages is the fair market value of the property at the time of conversion, with legal interest thereon up to the date of the verdict. *Swartz v. Gottlieb-Bauernschmidt-Straus Brewing Co.,* 109 Md. 393, 403, 71 A. 854, 16 Ann. Cas. 1156. We have decided to award plaintiff a judgment for the sum of $78, with interest at 6 per cent from March 26, 1944, the date of conversion.

> *Judgment reversed, and judgment entered in favor of plaintiff against defendant for $106.39, with interest from date, with costs.*