482 A.2d 483

**Harry Gerald SIBERT**

v.

**STATE of Maryland.**

**No. 20, Sept. Term, 1983.**

Court of Appeals of Maryland.

Oct. 22, 1984.

142

Douglas R. Taylor, Rockville, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON *, RODOWSKY and COUCH, JJ.

COLE, Judge.

We granted certiorari in this case to determine whether the trial court erred in denying appellant's request for an instruction as to the honest belief defense set forth in the statute charging him with theft.

Sibert was convicted of possession of stolen property under Maryland Code (1957, 1982 Repl.Vol.), Art. 27, § 342(c), after a jury trial in the Circuit Court for Washington County. According to the evidence, two pre-hung doors with sidelights with an aggregate value in excess of $1,000 were removed from a construction site of a bank in early June 1981 without the permission of the purchaser of the doors, the Burrey-Kindsvatter Company. Five months later, in November 1981, Sibert reported to Hagerstown Police a breaking and entering of, and theft from, his delicatessen-apartment building in Hagerstown. During the police investigation of the alleged break-in, a detective noticed two doors that appeared to match the description of the doors that had been stolen from Burrey-Kindsvatter. A representative of Burrey-Kindsvatter subsequently identified the doors as the same ones that had been stolen from the construction site. After obtaining search and arrest warrants police interviewed Sibert. During this interview, Sibert stated that he had purchased the doors for $125.00 each from a person named "Bill" from West Virginia. Sibert was unable to produce a receipt for the doors.

---

* Davidson, J., participated in the hearing and in the conference of the case in regard to its decision, but because of illness did not take part in the adoption of the opinion.

The Grand Jury for Washington County indicted Sibert on two counts of theft. The first count charged Sibert with theft under § 342 of Art. 27, and the second count charged him with possession of stolen property in violation of § 342(c). At trial the court acquitted Sibert of the first count. With respect to the second count, Sibert testified that he did not know that the doors had been stolen. In particular, Sibert claimed that he had purchased the doors from "Bill," who trial witnesses later identified as Douglas Grimm, who died October 17, 1981. According to Sibert, Bill had recently attended a nearby auction in the vicinity of the McCauley Building in Hagerstown. Bill asked Sibert whether he would like to purchase the doors. Sibert agreed after receiving repeated assurances from Bill that the doors had not been stolen. Sibert purchased the doors for $135.00 each, paying $125.00 for each at the time of delivery, the balance to be paid later.

At the close of the evidence, the trial court instructed the jury as to the elements of the crime of theft by possession. These instructions were based upon the language set forth in § 342(c). Sibert's counsel requested that the court further instruct the jury as to the statutory defenses to the crime of theft codified at § 343(c) of Art. 27. Although Sibert's counsel failed to specify the defenses within § 343(c) that were applicable, it is evident that only two of the four defenses under this statute would have any conceivable application to this case. These two defenses [1] provide:

(c) It is a defense to the offense of theft that:

(1) The defendant acted under a good faith claim of right to the property involved;

(2) The defendant acted in the honest belief that he had a right to obtain or exert control over the property as he did[.]

---

1. The other remaining defenses under § 343(c) deal with spousal property (§ 343(c)(3)) and trade secrets (§ 343(c)(4)).

Sibert's counsel argued that his defense to the charge of theft by possession encompassed precisely these two defenses because of Sibert's contention that he did not know that the doors had been stolen. The trial court denied the requested instruction, reasoning that the evidence did not require that it be given. Sibert's counsel thereupon made a timely objection. The jury convicted Sibert of theft by possession under § 342(c), and the court sentenced him to eight years' imprisonment. The Court of Special Appeals affirmed the conviction and sentence in an unreported per curiam opinion filed December 20, 1982. We granted Sibert's petition for writ of certiorari to consider the single issue presented.

The General Assembly's enactment in 1978 of the theft offense statutes resulted in the consolidation of various larceny related offenses into a single offense designated as theft. Chapter 849 of the 1978 Acts (codified at §§ 340–344 of Art. 27). Among those offenses consolidated into the theft statute was the offense of receiving stolen property. Art. 27, § 341. With the enactment of the theft statute, this offense was consolidated into the statutory offense of theft by possession of stolen property under § 342(c).[2] This

---

2. Section 342(c) provides:

(c) *Possession of stolen property.*—(1) A person commits the offense of theft if he possesses stolen personal property knowing that it has been stolen, or believing that it has probably been stolen, and:
(i) Has the purpose of depriving the owner of the property; or
(ii) Willfully or knowingly uses, conceals, or abandons the property in such manner as to deprive the owner of the property; or
(iii) Uses, conceals, or abandons the property knowing such use, concealment, or abandonment probably will deprive the owner of the property.
(2) The requisite knowledge may be inferred in the case of a person in the business of buying or selling goods who:
(i) Is found in possession or control of property stolen from two or more persons on separate occasions; or
(ii) During the year preceding the criminal possession charged, has acquired stolen property in a separate transaction; or
(iii) Being a person in the business of buying or selling property of the sort possessed, acquired it for a consideration which he knew was far below its reasonable value.

provision, the scope of which is broader than the former crime of receiving stolen property, carefully delineates the mental element of the crime of theft by possession of stolen property. Specifically, a person is subject to conviction under this provision if he possesses the stolen property with knowledge that the property has been stolen or with the belief that it has been stolen, and in addition satisfies at least one of the three elements contained in § 342(c)(1)(i)–(iii). For purposes of the theft statute, the phrase "with knowledge" has the same meaning as that of "knowingly" under § 340(e).[3]

In addition to consolidating various larceny-related offenses into a single offense designated as theft, as noted above, the General Assembly fashioned four separate statutory defenses to the offense of theft. The two defenses at issue in this appeal are the "claim of right" defense under § 343(c)(1) and the "honest belief" defense under § 343(c)(2).

---

(3) In any prosecution for theft by possession of stolen property under this section, it is not a defense that:

(i) The person who stole the property has not been convicted, apprehended, or identified; or

(ii) The defendant stole or participated in the stealing of the property; or

(iii) The stealing of the property did not occur in this State.

(4) A person who criminally possesses stolen property and a person who has stolen the property are not accomplices in theft for the purpose of any rule of evidence requiring corroboration of the testimony of an accomplice, unless the person who criminally possesses the property had participated in the stealing.

**3.** Section 340(e) provides:

A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware of his conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when he is practically certain that the result will be caused by his conduct. When knowledge of the existence of a particular fact is an element of an offense, that knowledge is established if a person is practically certain of its existence. Equivalent terms such as "knowing" or "with knowledge" have the same meaning.

As an initial matter, the legislature apparently viewed both defenses as "claim of right defenses." [4] *See Revision of Maryland Theft Laws and Bad Check Laws* 53, ch. 849 of Acts of 1978, Md.Spec.Rpts. (Joint Subcommittee on Theft Related Offenses Oct.1978) [hereinafter cited as *Maryland Revision* ]. In elaborating upon the claim of right defense, the Joint Subcommittee observed:

The claim of right defense springs from the notion that in cases of common law larceny the defendant must have had an intent to permanently deprive the owner of the property. If the defendant acted under a mistake as to his right to deal with the property, he could not be guilty of larceny. Similarly, if the defendant can produce evidence that he was acting under an honest belief he had a "claim of right", *this will be weighed by the trier of the facts in resolving the issue of whether the defendant possessed the requisite mens rea to commit the offense of theft.* [Emphasis supplied.]

*Id.* at 53–54. According to this legislative commentary, the claim of right defense in Maryland originated in *Saunders v. Mullinix*, 195 Md. 235, 72 A.2d 720 (1950). The *Saunders* Court, in referring to this defense in *dicta*, stated:

---

**4.** The Model Penal Code, which served as a model for portions of Maryland's theft statute, likewise categorizes these two defenses under the subheading of "claim of right." Model Penal Code and Commentaries § 223.1(3) (Official Draft and Revised Comments 1980). This provision states:

(3) *Claim of Right.* It is an affirmative defense to prosecution for theft that the actor:

(a) was unaware that the property or service was that of another; or

(b) acted under an honest claim of right to the property or service involved or that he had a right to acquire or dispose of it as he did; or

(c) took property exposed for sale, intending to purchase and pay for it promptly, or reasonably believing that the owner, if present, would have consented.

Although these provisions differ in form from the Maryland statute, the defenses are essentially the same: § 223.1(3)(a) is the honest belief defense and § 223.1(3)(b) is the claim of right defense.

> It is a generally accepted rule in criminal prosecutions that one who either takes or retains the property of another without the latter's consent for a debt which he in good faith claims to be due him by the owner of the property is not guilty of larceny, because the existence of the debt or the *bona fide* belief in its existence shows a lack of felonious intent in the taking or detention of the property.

*Id.* at 240, 72 A.2d at 722. We note parenthetically that *Saunders* was a civil conversion case, and the court discussed the claim of right defense by contrasting it to the tort of conversion. With these introductory considerations in mind, we now turn our attention to the claim of right and honest belief defenses under § 343(c)(1)–(2).

## I

■ The theft statute nowhere defines the phrase "claim of right," but it is clear that this defense usually arises when a person asserts a right to the property on demand in satisfaction of a claim. *See Saunders v. Mullinix, supra;* 3 *Wharton's Criminal Law* § 366, at 340–41 (C. Torcia 14th ed. 1980); Model Penal Code and Commentaries, *supra,* § 223.1, at 155–57. The record in the case *sub judice* is devoid of any evidence that would give rise to the notion that Sibert had a claim of right to these doors. Further, Sibert nowhere in his brief posits a serious argument that an instruction as to this defense should have been given by the trial judge. In fact, Sibert's counsel at oral argument conceded that the evidence adduced at trial would not support the giving of an instruction as to this defense. We therefore hold that the trial court did not err in refusing to grant appellant's requested instruction based upon the claim of right defense set forth in § 343(c)(1).

## II

■ The honest belief defense in § 343(c)(2) provides in essence that a person is not guilty of theft if he "acted in the honest belief that he had the right to obtain or exert

control over the property as he did." Neither the theft statute nor the accompanying legislative history defines the phrase "honest belief." Nevertheless, it is clear that this defense operates to negate the *mens rea* for the offense of theft, thereby providing a total defense.

The commentary to the Model Penal Code (Model Code) is particularly instructive as to the purpose for the inclusion of the honest belief defense in its draft. First, the commentary notes that "it seems important to make it clear beyond doubt that an honest belief that the property does not belong to another should be a defense to theft." Model Penal Code and Commentaries, *supra,* § 223.1, at 153. Second, the commentary states that recklessness or negligence should not serve as a basis for theft liability. *Id.* at 154.

■ The threshold issue we must address, then, is whether there was evidence adduced during the course of the trial that generated a jury issue as to whether Sibert had a honest belief that he had a right to obtain or exert control over the doors as he did.

In essence, Sibert testified that while at an auction in the McCauley Building sometime in August 1981, he was approached by "Bill," a person whom he believed lived in West Virginia, who inquired as to whether Sibert was interested in buying some doors. Sibert indicated that at the time he was not interested in the doors being offered for sale. Later that afternoon, Sibert testified that he had a change of mind and agreed to look at the doors. At that time, Sibert testified that he questioned Bill as to whether the doors were stolen:

Q. Now, did there come a time when you agreed to purchase the doors for $135.00 each, is that correct?

A. Yes sir.

Q. Did you ask him [Bill] any questions as regarding whether or not they were stolen?

A. Yes sir, I did, I did, I asked him, I said, "Bill," I said, "I don't want to buy nothing hot."

Q. And what did he say?

A. He said that the doors are not hot.

Q. Did he say anything else?

A. He said would I sell you doors in front of the McCauley Building on a Thursday afternoon with all these people?

This testimony demonstrates that Sibert initiated the discussion with Bill as to whether the doors had been stolen because Sibert was concerned as to how Bill obtained the doors in the first instance. Sibert sought assurances from Bill that the doors in fact had not been stolen, and gave the following explanation for his questioning of Bill on this matter.

Q. And you did ask him [Bill] if the doors were hot didn't you?

A. Yes sir, I did.

Q. Because the price was so cheap?

A. No sir, at the McCauley Building you see things auctioned off at very low prices. I didn't know if he got them at the McCauley Building or where he got them.

Sibert produced three witnesses to corroborate his account of the transaction. These witnesses, Sibert's father (Harry E. Sibert), a part-time employee of Sibert (Carl Brodus), and a friend of Sibert (Foster Kelley), all testified that they assisted Sibert in unloading the doors from "some old ragged Ford pick-up truck," and that the transaction took place on a public street in Hagerstown during one August afternoon.

By his own admission, Sibert paid $250 in cash for the two doors, with $20 to be paid at a later unspecified date. From Sibert's point of view, a jury could draw several rational inferences from this description of the transaction.

First, given Sibert's tenuous financial position at the time (Sibert subsequently declared bankruptcy), Sibert paid a relatively substantial amount of money for the doors.

Second, Sibert admitted at trial that the doors were worth "three or four hundred dollars a piece" and thought that he

was getting a good bargain. On the basis of this testimony, Sibert argues that a jury could reasonably conclude that purchasing goods from a person who had just attended an auction is not necessarily inconsistent with the honest belief defense. Auctioned goods usually sell for less than the prevailing market price.

Third, Sibert and Bill dickered over the price of the doors on the street, in the afternoon, in the presence of others. Bill originally requested $150 for each door, but the parties finally agreed upon a price of $135 for each door. A jury could reasonably conclude from this testimony that Sibert engaged in an open and notorious bargaining process so as to strike the best possible deal for himself.

Fourth, Sibert candidly admitted at trial that he did not obtain a receipt for the doors, but he argues that this was a cash transaction. Sibert testified that he did not write a check because his checking account lacked funds sufficient to cover the price of the doors. Although this does not totally explain why a businessman such as Sibert would fail to secure a written receipt for a transaction of this type, a jury could nonetheless conclude that a receipt was not necessary under these circumstances.

In addition, there is no dispute that Sibert kept the doors in open view in his building. One door, which was installed on the west side of his building, provided the entrance for an apartment he had recently renovated. The other door, not yet installed, was kept on the east side of the second floor of the building. Detective J.E. Ryder of the Hagerstown Police Department acknowledged during cross-examination that he openly saw one of the doors in Sibert's building in October 1981. In addition, Sibert called police in November 1981 to report a break-in of his building. Sibert escorted the officers who responded to the call through his building. At all times the doors were in open view and were not covered. Moreover, Sibert made no attempt to remove various identification and production stickers affixed to the doors. On the basis of these facts, a jury could

conclude that Sibert manifested a honest belief that he had a right to exert control over the doors as he did by virtue of his making no attempt to secret the doors from the inquisitive eyes of investigating police.

In our view, the above makes clear that Sibert produced evidence sufficient to generate a jury issue as to the honest belief defense under § 343(c)(2). Whether a jury sitting as the trier of fact would give any weight to this evidence or would lend any credence to Sibert and his witnesses is for the jury's determination, not that of the trial judge. The contradictions between the testimony elicited from the State's witnesses and that of the defense's witnesses go only to the weight of the evidence, not to its sufficiency. *Jackson v. State*, 52 Md.App. 327, 335, 449 A.2d 438 (1982). Simply put, the jury is free to discount or disregard totally Sibert's account of the transaction. But once he generates the issue, the trial court cannot withhold a relevant issue such as this from the jury's consideration in the first instance. It is within the jury's province, not that of the court's, to determine whether Sibert should benefit from the honest belief defense in this factual situation, regardless of how dubious or incredible Sibert's account may appear to the trial court.

■ The Court of Special Appeals also concluded that Sibert produced evidence sufficient to generate a jury issue as to the honest belief defense. But that court's analysis went astray when it concluded that the trial court's instruction fairly covered Sibert's honest belief defense under then Rule 757 b.[5] The trial court instructed the jury that, under § 342(c), a person commits theft "if he possesses stolen property knowing that it has been stolen, or believing that it has probably been stolen ...." In light of this instruction, the intermediate appellate court reasoned that had the

---

5. Effective July 1, 1984, Rule 757 b was redesignated Rule 4–325(c). Rule 4–325(c), which was slightly edited for stylistic reasons, provides that "[t]he court need not grant a requested instruction if the matter is fairly covered by instructions actually given."

jury accepted Sibert's version of the transaction, it would have concluded that he did not know the doors had been stolen, and he would have been acquitted. As a consequence, Sibert's requested instruction would have added no information that was not already provided in the instruction given because the court's instruction fairly covered every essential question of law raised by the evidence. Although this reasoning is appealing, it does violence to the legislature's intent in enacting the theft-related defenses in general and the honest belief defense in particular. What the intermediate appellate court's analysis fails to recognize is that the honest belief defense is mandated by the legislature when the defendant generates the issue and requests that the jury be so instructed.

Section 343(c) unequivocally states that the honest belief defense "is a defense to theft." Section 343(c) does not create exceptions or limit the honest belief defense to particular kinds of theft. The Model Penal Code likewise provides that comparable defenses under its draft statute apply to theft, *see* Model Penal Code § 223.1(3), and the accompanying commentary states that subsection (3) creates a defense "applicable to *all* forms of theft." Model Penal Code and Commentaries, *supra*, at 122 (emphasis supplied). This language supports our view that the General Assembly intended the honest belief defense to apply to theft by possession under § 342(c).

 We have said time and again that when the language of the statute is clear and unambiguous, the words must be held to mean what they express. *Bledsoe v. Bledsoe*, 294 Md. 183, 189, 448 A.2d 353 (1982); *State v. Berry*, 287 Md. 491, 495–96, 413 A.2d 557 (1980); *Coleman v. State*, 281 Md. 538, 546, 380 A.2d 49 (1977). We have also said that, if reasonably possible, no word, clause, sentence, or phrase should be rendered surplusage, superfluous, meaningless, or nugatory. *City of Baltimore v. Hackley*, 300 Md. 277, 283, 477 A.2d 1174 (1984); *Police Comm'r of Baltimore City v. Dowling*, 281 Md. 412, 419, 379 A.2d 1007 (1977);

*Prince George's County v. White,* 275 Md. 314, 319, 340 A.2d 236 (1975); *St. Paul Fire & Mar. Ins. Co. v. Insurance Comm'r,* 275 Md. 130, 142, 339 A.2d 291 (1975); *A.H. Smith Sand & Gravel Co. v. Department of Water Resources,* 270 Md. 652, 659, 313 A.2d 820 (1974) (quoting *Thomas v. Police Comm'r of Baltimore City,* 211 Md. 357, 361, 127 A.2d 625 (1956)).

For us to conclude that jury instructions encompassing the elements of theft by possession fairly cover the honest belief defense when generated by the evidence would be for us to ignore the legislative intent in enacting § 343(c)(2) and render the language of this section surplusage and a nullity. In effect, this could create a *per se* rule that jury instructions are never required for a § 343(c)(2) defense in a § 342(c) theft by possession case. We do not believe the legislature intended such an anomalous result.

As we see it, then, when the legislature explicitly enumerated four defenses to the crime of theft, it intended a defendant to be entitled to a jury instruction on any defense generated by the evidence.

■ We hold that an instruction that merely delineates the mental elements of theft by possession under § 342(c) does not fairly cover the honest belief defense under § 343(c)(2) and consequently the trial court erred in refusing to instruct the jury as to the honest belief defense in this case.[6]

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND TO THE CIRCUIT COURT FOR WASHINGTON COUNTY FOR A NEW TRIAL. WASHINGTON COUNTY TO PAY THE COSTS.

---

6. We note that the trial court permitted counsel to read the honest belief defense statute to the jury during closing argument. Maryland law is clear, however, that this is no substitute for a jury instruction. *Hardison v. State,* 226 Md. 53, 172 A.2d 407 (1961).