ADKINS, Judge.
 

 Kenneth M. Allen, appellant, was convicted by a jury in the Circuit Court for Baltimore City of theft of property valued over $500, and unauthorized use. The jury found him not guilty of automobile theft. Allen presents six questions on appeal, which we have rephrased and reordered:
 

 I. Did the trial court err in refusing to instruct the jury on the “honest belief’ defense?
 

 II. Did the trial court render a judgment of acquittal on the theft charge?
 

 III. Did the trial court err in failing to vacate the conviction for unauthorized use?
 

 IV. Did the trial court err in concluding that defense counsel had not established a
 
 prima facie
 
 case of discrimination in jury selection?
 

 V. Did the trial court err in refusing to permit defense counsel to refer to the “honest belief” defense in her closing?
 

 
 *180
 
 VI. Did the trial court err in permitting a police officer to testify regarding the significance of the keys being in the stolen automobile when it was recovered?
 

 We agree that the trial court erred in refusing to instruct the jury on the “honest belief’ defense and, accordingly, reverse Allen’s convictions. Because we are reversing the convictions, we need not answer questions IV, V, and VI. We address questions II and III because they concern double jeopardy issues.
 

 FACTS AND LEGAL PROCEEDINGS
 

 On the night of Friday, February 7, 2003, Richard Sullivan parked his four or five year old Pontiac near his home, in the 1000 block of Guilford Avenue. When he looked for it at 6:30 a.m. on Monday, February 10, 2003, he could not find it. Sullivan’s keys had been in his apartment all weekend and only his wife had another set of keys. Sullivan had not given anyone permission to use the car. After ascertaining that the vehicle had not been towed by the city, Sullivan telephoned the police.
 

 Nine days later, Detective Brian Brennan, a member of the Baltimore County/Baltimore City Regional Auto Task Force, was working on routine patrol in the 500 block of North Fulton Avenue. At trial, Brennan explained that the area was a target area “that our unit has designated as a high volume of stolen cars being taken and driven through.” The detective saw a green Pontiac with Maryland tag HTH-023 and decided to check with NCIC
 
 [1]
 
 to ascertain whether the vehicle had been reported stolen. He learned that the car had been reported stolen from Baltimore City on February 10, 2003.
 

 Brennan and other officers in his unit followed the car and blocked it in as its driver was attempting to park. The
 
 *181
 
 officers removed the driver from the car and arrested him. At trial, Brennan identified Allen as the driver of the vehicle.
 

 Allen made no attempt to flee. When he was arrested, the keys were in the car and the ignition was undamaged. Allen told the officers that “he rented a car for $10.00 from an individual in the 600 block of Pitcher.” He told them that he did not know the name or address of the person from whom he rented the car, and that he did not have a written rental agreement for the car.
 

 Additional facts will be set forth as needed in our discussion of the questions presented.
 

 DISCUSSION
 

 I.
 

 “Honest Belief’ Instruction
 

 Defense counsel asked the trial court to give an instruction on the honest belief defense. The trial court did not say whether it would give that instruction to the jury. Later, the prosecutor asked the trial court if the court needed to address the instruction. The trial court replied, no, but told defense counsel that she could argue it in her closing. Defense counsel objected to the trial court’s ruling and asked that the instruction be placed in the court file.
 
 [2]
 
 The court noted the objection, saying that it was still denied.
 

 Later, defense counsel asked the court if it had reconsidered the honest belief instruction. The court responded that it had not. After the court gave its instructions, defense counsel initially said, “No exceptions.” Before the State started its closing argument, however, she again tried to raise the “honest belief’ issue:
 

 
 *182
 
 [DEFENSE COUNSEL]: I’d like to raise the issue of the honest—
 

 THE COURT: Don’t go there three times. Denied. I denied it twice. I don’t need to do it three times. It was preserved.
 

 The trial court later instructed the jury:
 

 The defendant is also charged with the crime or offense of what we commonly call unauthorized use, and I instruct you that in order for the State to prove that charge, the State must prove that the defendant wilfully or knowingly obtained or exerted unauthorized control over the property of the owner, and that the defendant had the purpose of depriving the owner of the property, and that the value of the property was at least $500.00.[
 
 3
 
 ]
 

 The defendant is charged also with the offense of theft, as I indicated. The other theft provision is that the State must prove that the defendant possessed stolen property, that the defendant knew that the property was stolen or believed that it was probably stolen, and that the defendant had the purpose of depriving the owner of the property, and that the value of the property was at least $500.00.
 

 The court also told the jury:
 

 You are further instructed that one who is found in exclusive possession of recently stolen property unless reasonably explained, that may be evidence of theft. If you find that the defendant was in possession of the property shortly after it was stolen, and the defendant’s possession was not otherwise explained by the evidence, you may, but are not required to find the defendant guilty of theft.
 

 The Parties’ Contentions
 

 Allen asserts that Detective Brennan’s testimony that Allen said he had rented the car from another individual generated
 
 *183
 
 an “honest defense” instruction. The State responds that Allen waived the issue when counsel said that she had no exceptions to the instructions. Alternatively, the State argues that, even if the request was preserved, other instructions sufficiently covered the defense.
 

 Preservation
 

 Md. Rule 4-325(e) provides, in pertinent part:
 

 (e) Objection. No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection.
 

 The purpose of the rule is to give the court an opportunity to correct the instruction before the jury starts to deliberate.
 
 See Bowman v. State,
 
 337 Md. 65, 69, 650 A.2d 954 (1994);
 
 Morris v. State,
 
 153 Md.App. 480, 509, 837 A.2d 248 (2003).
 

 In this instance, although defense counsel stated that she had no exceptions to the instructions, she already had asked twice for an “honest belief’ instruction. She also requested that the instruction be placed in the court file. The court explicitly noted the objection. In addition, shortly after telling the court that she had no exceptions, defense counsel attempted to renew her request for the instruction, but she was not permitted to do so.
 

 At that point, counsel and the trial court were still discussing the instructions, and the trial court could have given the honest belief instruction. In these circumstances, defense counsel adequately preserved the issue for our review.
 
 See Banks v. State,
 
 84 Md.App. 582, 588-90, 581 A.2d 439 (1990)(when “a party provides the court with additional grounds for an objection before the action which the objection sought to avoid has occurred,” the court has the opportunity to correct any error it may have made and the challenge is preserved for appellate review).
 

 
 *184
 
 Need For The Honest Belief Defense
 

 McLCode (2002), section 7-110(c)(2) of the Criminal Law Article provides that it is a defense to the crime of theft that “the defendant acted in the honest belief that the defendant had the right to obtain or exert control over the property as the defendant did.”
 

 Md. Rule 4-325(c) states that “[t]he court may, and at the request of any party shall, instruct the jury as to the applicable law.” When requested to do so by a party, the trial court is required to give an instruction that correctly states the applicable law if it has not been fairly covered in the instructions actually given.
 
 See id; State v. Martin,
 
 329 Md. 351, 356, 619 A.2d 992,
 
 cert. denied,
 
 510 U.S. 855, 114 S.Ct. 161, 126 L.Ed.2d 122 (1993). The instruction must be given if there is “some evidence” giving rise to a jury issue on the defense.
 
 See Dykes v. State,
 
 319 Md. 206, 216, 571 A.2d 1251 (1990).
 

 We conclude that the evidence here generated an “honest belief’ issue. The car had been stolen nine days earlier. Allen told the officers who stopped him that he had rented it for $10 from someone he had met on the street. The ignition of the vehicle was intact and the key was in it. Allen did not try to flee when police stopped him. Although Brennan testified that many stolen cars had intact ignitions and keys, the jury could conclude that many lay persons, including Allen, did not have experience with stolen cars and did not know that. One inference that a reasonable juror might draw from this evidence is that Allen believed the car was not stolen. Indeed, the trial court considered the “honest belief’ issue sufficiently raised to merit defense counsel arguing it to the jury in her closing.
 

 The State contends that the instructions given adequately covered the issue. We disagree. The trial court instructed the jury, in accordance with MPJI—Crim. 4:32:2, that the State had to prove that “the defendant knew that the property was stolen or believed that it was probably stolen.” That instruction was similar to the one given by the trial court
 
 *185
 
 in
 
 Sibert, v. State,
 
 301 Md. 141, 152, 482 A.2d 483 (1984), that “a person commits theft ‘if he possesses stolen property-knowing that it has been stolen, or believing that it has probably been stolenf.]’ ” The
 
 Sibert
 
 Court was clear, however, that if the evidence generates an honest belief issue, this pattern instruction is inadequate:
 

 For us to conclude that jury instructions encompassing the elements of theft by possession fairly cover the honest belief defense when generated by the evidence would be for us to ignore the legislative intent in enacting § 343(c)(2) and render the language of this section surplusage and a nullity. In effect, this could create a per se rule that jury instructions are never required for a § 343(c)(2) defense in a § 342(c) theft by possession case. We do not believe the legislature intended such an anomalous result.
 

 As we see it, then, when the legislature explicitly enumerated four defenses to the crime of theft, it intended a defendant to be entitled to a jury instruction on any defense generated by the evidence.
 

 We hold that an instruction that merely delineates the mental elements of theft by possession under § 342(c) does not fairly cover the honest belief defense under § 342(c)(2) and consequently the trial court erred in refusing to instruct the jury as to the honest belief defense in this case.
 

 Id.
 
 at 154, 482 A.2d 483. The Court of Appeals affirmed that holding in
 
 Binnie v. State,
 
 321 Md. 572, 582, 583 A.2d 1037 (1991), reiterating that, “once the honest belief defense is fairly generated by the evidence, the trial court may not refuse the defendant’s request to instruct the jury regarding it.”
 
 See generally
 
 Prathyusha Reddy,
 
 Clarifying the “Fairly Covered” Component of Maryland Rule 4-325(c),
 
 62 Md. L.Rev. 782 (2003)(reviewing Court of Appeals decisions holding that “fairly covered” includes “instructions that help direct the jury’s attention to the defendant’s theory of the case”).
 

 Sibe/rt
 
 explains the rationale for giving a specific “honest belief’ instruction:
 

 
 *186
 
 The commentary to the Model Penal Code (Model Code) is particularly instructive as to the purpose for the inclusion of the honest belief defense in its draft. First, the commentary notes that “it seems important to make it clear beyond doubt that an honest belief that the property does not belong to another should be a defense to theft.” Model Penal Code and Commentaries, [ (Official Draft and Revised Comments 1980)], § 223.1, at 153. Second, the commentary states that recklessness or negligence should not serve as a basis for theft liability.
 

 Id.
 
 at 149, 482 A.2d 483. This clarification is especially important here, because the trial court told the jury that evidence of a person found in possession of recently stolen property, unless the possession is reasonably explained, may be evidence of theft. Without the honest belief instruction, the jury may have been confused about what the State was required to prove.
 

 The importance of making that clear is well illustrated by the State’s Attorney’s comment during trial that the proposed honest belief instruction was “contradictory to one of the other Pattern Instructions,” and by the State’s assertion in this Court that the honest belief instruction “would have been confusing and possibly misleading.” If the instructions given seem somehow contradictory to the “honest belief’ instruction, the instructions cannot be said to fairly explain the defense.
 

 We are not persuaded otherwise by
 
 Davis v. State,
 
 104 Md.App. 290, 293, 656 A.2d 326 (1995). In that case, we concluded that the defendant was “entitled to an instruction that embodied the ‘honest belief defense set forth in Art. 27, § 343, and the lack of scienter defense” with respect to a charge of unauthorized use of an automobile, but rejected Davis’ claim that the trial court was required to give the instruction in the language of the statute. We held an instruction that the jury had to find Davis had “guilty knowledge” before it could find him guilty of unauthorized use fairly covered the defense.
 
 See id.
 
 at 294, 656 A.2d 326. In this case, however, the trial court did not give a “guilty knowledge” instruction, but only told the jury that “the State had to prove
 
 *187
 
 that the defendant wilfully or knowingly obtained or exerted unauthorized control over the property of the owner.” Thus, there was no instruction comparable to the one we found sufficient in
 
 Davis.
 

 Accordingly, we must vacate both the conviction for theft and the conviction for unauthorized use of an automobile.
 

 II.
 

 Submission Of The Theft Charge
 

 At the close of the State’s case, defense counsel moved for a judgment of acquittal and argued that there had been no evidence that Allen was the individual who stole the car, pointing out that Allen was found in possession of the car nine days after it had been stolen. She submitted on the charge of unauthorized use of the vehicle. The prosecutor argued that, under the auto theft statute, the State was not required to show that Allen was the person who actually stole the vehicle. The trial court corrected the prosecutor, explaining that the auto theft statute required proof that Allen actually took the car, even though the general theft statute did not require such proof. The State responded that whether Allen took the vehicle was a question of fact for the jury.
 

 Then the following occurred:
 

 THE COURT: The theft over, she submits, and I’ll grant it. I mean, I’ll deny it anyway. 104,[
 
 4
 
 ] I will grant it on theft over.
 

 [PROSECUTOR]: And, Your Honor—
 

 THE COURT: 7-105.
 

 [PROSECUTOR]: The standard is, in looking at the evidence—
 

 THE COURT: Hold on. Hold on.
 

 [PROSECUTOR]:—in the light—okay.
 

 
 *188
 
 THE COURT: (Pause). Okay. Pm going to deny it as to the unlawful taking of the motor vehicle. I think it’s broad enough to cover it. I think it’s broad enough to cover it. That’s under 7-105. A person may not knowingly, wilfully take a motor vehicle out of the owner’s lawful custody, control or without the owner’s consent. I think it’s rather broad. I think it’s enough. I mean, I think he didn’t give the consent. Now, the argument is whether or not he—it’s a matter, it’s an issue for the jury, I think.
 

 Well, let me strike that. Your motion is denied at this point.
 

 The trial court then asked defense counsel if she wanted to advise Allen about his right to testify. As defense co-counsel began to advise Allen about his right to testify, the clerk inquired:
 

 THE CLERK: The theft you denied?
 

 THE COURT: Yes, I denied the motions as to judgment acquittal as to all three; heard and denied.
 

 THE CLERK: Uh-huh.
 

 Allen decided that he would not testify, and defense counsel indicated that they would call the police officer as a defense witness. The trial court and counsel then discussed jury instructions.
 

 Later, discussing the jury instructions, the prosecutor requested the theft instruction. The trial court indicated that it would instruct the jury that the State had to prove that the defendant “took and carried away the property of another, and that the defendant did so without authorization.” The prosecutor also asked for an instruction on the inference from exclusive unexplained possession. The trial court then asked about the instruction for unauthorized use.
 

 When the prosecutor asked about instructions on “separate consideration of multiple counts,” the court declined, referring to the counts for submission to the jury:
 

 THE COURT: I’m not giving that. I mean, they’ve got three counts to consider.
 

 
 *189
 
 [DEFENSE COUNSEL]: Two?
 

 THE COURT: Huh?
 

 [DEFENSE COUNSEL]: Two counts?
 

 [PROSECUTOR]: Three.
 

 THE COURT: Three. I kept the other one.
 

 [DEFENSE COUNSEL]: I believe, Your Honor, granted my motion on the theft over?
 

 [PROSECUTOR]: No.
 

 THE COURT: No.
 

 [DEFENSE CO-COUNSEL]: I think you did say granted, Your Honor, but I—
 

 THE COURT: No. I said denied. I think I initially said granted, but I said immediately, right after that, I said denied.
 

 [DEFENSE CO-COUNSEL]: I thought you misspoke and—
 

 THE COURT: I did. I really did.
 

 Allen contends that the record shows that the trial court intentionally granted the motion, then changed its mind. The State counters that the trial court never intentionally granted the judgment of acquittal, but merely “misspoke” and “immediately corrected] its misstatement.”
 

 Judgment Of Acquittal
 

 Whether there has been an acquittal depends on “whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.”
 
 United States v. Martin Linen Supply Co.,
 
 430 U.S. 564, 571, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977);
 
 see Wright v. State,
 
 307 Md. 552, 571, 515 A.2d 1157 (1986). Cases in Maryland and elsewhere have recognized the difference between a “slip of the tongue” or preliminary comments, on the one hand, and an actual resolution of the sufficiency issue on the other.
 

 In
 
 Pugh v. State,
 
 271 Md. 701, 702, 319 A.2d 542 (1974), the trial court granted a “not guilty” verdict after a court trial.
 
 *190
 
 Defense counsel made his final argument, and the prosecutor chose not to argue.
 
 See id.
 
 at 703-04, 319 A.2d 542. The trial court recounted the evidence and stated:
 

 So, the verdict is guilty on the first count. Does anybody have the indictment? Guilty in 2110, and not guilty in 2111. I don’t think it’s in sufficient quantity.
 

 See id.
 
 at 704, 319 A.2d 542. At that point, the following occurred:
 

 [PROSECUTOR]: 2111 would be the distribution charge. That’s what the State is pressing in this case.
 

 THE COURT: I would be glad to hear from you.
 

 [PROSECUTOR]: I believe that we have evidence, ample evidence of sale. That’s exactly what the State is going after. This man is a distributor of cocaine, and on the night of the 18th of February—
 

 THE COURT: I see what you mean.
 

 [PROSECUTOR]:—he made a sale.
 

 THE COURT: I was thinking of it in a different way. So, the verdict is guilty of 2111, because it was an actual sale. What I was thinking of was the possession in quantity to indicate distribution....
 

 Id.
 

 The Court of Appeals reversed, holding that the principles of double jeopardy precluded a conviction on the distribution charge.
 
 See id.
 
 at 704, 707, 319 A.2d 542. After reviewing Maryland and United States Supreme Court double jeopardy decisions, the Court explained:
 

 It is ... settled that once the trier of fact in a criminal case, whether it be the jury or the judge, intentionally renders a verdict of “not guilty,” the verdict is final and the defendant cannot later be retried on or found guilty of the same charge.
 

 Id.
 
 at 706, 319 A.2d 542.
 

 The Court recognized that a “not guilty” verdict required an intentional finding, so that “where a judge ‘obviously inadvertently’ says one thing when he means something else, and
 
 *191
 
 immediately thereafter corrects himself, a ‘verdict’ would not be rendered[.]”
 
 Id.
 
 at 707, 319 A.2d 542. In Pugh’s case, however, the trial court’s finding of not guilty was neither “inadvertent” nor a “slip of the tongue.”
 
 See id.
 

 Instead, it represented an intended decision based upon the judge’s view that the prosecution had failed to prove possession of cocaine in sufficient quantity as to indicate an intent to distribute. When the prosecution then argued that its case was grounded upon an actual sale, rather than an inference of distribution based on possession of the drug in sufficient quantity, the trial judge changed his mind. He decided that, in light of this theory of the prosecution, the evidence was sufficient to show distribution or an intent to distribute the drug.
 

 Id.
 
 The Court reiterated that, “[o]nce a trial judge intentionally renders a verdict of ‘not guilty’ on a criminal charge, the prohibition against double jeopardy does not permit him to change his mind.”
 
 Id.
 

 In
 
 Brooks v. State,
 
 299 Md. 146, 152, 472 A.2d 981 (1984), as in
 
 Pugh,
 
 the prosecutor did not argue against a motion for judgment of acquittal on a conspiracy charge, but merely submitted. Also as in
 
 Pugh,
 
 the trial court changed its mind after listening to the prosecutor’s subsequent argument.
 
 See id.
 
 at 153, 472 A.2d 981. The Court of Appeals vacated Brooks’ conspiracy conviction, concluding that the grant of the motion for judgment of acquittal was neither “merely preliminary,” “inadvertent,” nor “a slip of the tongue,” but “ ‘represented an intended decision based upon the judge’s view that the prosecution had failed to prove’ that Brooks conspired to commit armed robbery.”
 
 Id.
 
 at 154-55, 472 A.2d 981 (quoting
 
 Pugh,
 
 271 Md. at 707, 319 A.2d 542).
 

 Other courts, concluding that a trial court’s comments were the result of “a slip of the tongue” or not intended to be final, have recognized that such comments do not implicate the principles of double jeopardy. In
 
 Kansas v. Becknell,
 
 5 Kan.App.2d 269, 615 P.2d 795, 801 (1980), for example, the Court of Appeals of Kansas concluded that the trial court’s
 
 *192
 
 statement that the defendant was not guilty of one count constituted a “slip of the tongue.”
 

 Appellant’s final claim of error is that of double jeopardy. His claim in this regard is based on the judge’s making a statement that appellant was not guilty of the count of possession with intent to sell and immediately thereafter making a statement that he was incorrect in this regard. This was merely a slip of tongue on the part of the judge, and we conclude that such cannot give rise to a valid double jeopardy claim when all of the discussion took place at the same hearing. The court’s ruling was merely a clarification of an earlier misunderstanding.
 

 Id.
 

 In
 
 Arizona v. Newfield,
 
 161 Ariz. 470, 778 P.2d 1366, 1367 (Ct.App.1989),
 
 petitions for review denied,
 
 the Court of Appeals of Arizona held that the trial court had not violated double jeopardy when it initially indicated it would grant a judgment of acquittal, but, in the course of a continuing discussion, concluded that the judgment would be inappropriate. The appellate court concluded that no verdict had been rendered:
 

 The transcript indicates a continuing discussion between the court, the prosecutor, and defense counsel regarding New-field’s motion for judgment of acquittal. The trial court ultimately denied the motion.
 

 Id.
 
 at 1368.
 

 Illinois courts have also recognized that, in order for a verdict to be a valid acquittal, the trial court’s comment regarding the verdict must have intended it to be a final resolution of the issues. In
 
 Illinois v. Williams,
 
 188 Ill.2d 293, 242 Ill.Dec. 245, 721 N.E.2d 524 (1999), the Supreme Court of Illinois considered whether the trial court’s discussion of the evidence amounted to a judgment of acquittal. There, Williams had moved for a finding of not guilty at the end of the State’s case.
 
 See id.,
 
 242 Ill.Dec. 245, 721 N.E.2d at 526. Following argument on the motion, the trial court said:
 

 
 *193
 
 “I simply cannot find based on the evidence that’s presented to me that the State even in the light most favorable to the State has met a prima facie case at this juncture, so I’m going to grant the motion for a directed finding and finding of not guilty as to the armed robbery as well because I believe it would have to be established that that ... there was an intention to do that prior to the killing and I don’t find that he participated in that. I find that ... the evidence established that he did not know until the gun was produced what occurred.... I don’t see that he profited other than the $20. He didn’t participate as far as taking the drugs. We don’t have him taking anything anywhere. [H]is name is not on the bus ticket. There’s nothing to indicate that the gun belonged to him or that there was any participation in the weapon. I don’t think that that would be appropriate where there’s nothing that’s established to show that there was any kind of conspiracy prior to the act if something is taken after the act.”
 

 Id.,
 
 242 Ill.Dec. 245, 721 N.E.2d at 526.
 

 The prosecutor asked the trial court to hold the portion of its ruling pertaining to aimed robbery and the trial court agreed, but told the prosecutor:
 

 be clear that I am making a finding that he did not aid or abet, that he did not know what was happening as far as the murder was concerned until it was already accomplished. I’m making that finding based on the evidence I’ve received.”
 

 Id.
 

 “The parties agreed with the trial court that the matter would be held until the next day.”
 
 Id.,
 
 242 Ill.Dec. 245, 721 N.E.2d at 527. The following day, the State presented authority on the issue of the armed robbery.
 
 See id.
 
 Following argument from both parties, the trial court denied defendant’s motion for a finding of not guilty as to the aimed robbery charge.
 
 See id,.
 
 The State presented no further evidence, and the defense rested.
 
 See id.
 
 Following closing arguments,
 
 *194
 
 the trial court found defendant guilty of armed robbery.
 
 See id.,
 
 242 Ill.Dec. 245, 721 N.E.2d at 526-27.
 

 Williams contended that the trial court had previously found him not guilty.
 
 See id.,
 
 242 Ill.Dec. 245, 721 N.E.2d at 527. The Supreme Court of Illinois disagreed, concluding that the trial court had not “unequivocally grant[ed] defendant’s motion for a finding of not guilty on the armed robbery charge.”
 
 Id.,
 
 242 Ill.Dec. 245, 721 N.E.2d at 528. The statements upon which Williams relied “were equivocal and amounted merely to a determination to hold the ruling on the defendant’s motion in abeyance until the following day.”
 
 Id.,
 
 242 Ill.Dec. 245, 721 N.E.2d at 530.
 

 In
 
 Illinois v. Burnette,
 
 325 Ill.App.3d 792, 259 Ill.Dec. 268, 758 N.E.2d 391, 404 (2001),
 
 appeal denied,
 
 198 Ill.2d 597, 262 Ill.Dec. 621, 766 N.E.2d 241 (2002), the Appellate Court of Illinois rejected Burnette’s claim that the trial court had rendered a judgment of acquittal on a charge of home invasion. Burnette was charged with three counts of home invasion, each tracking the language of a portion of the home invasion statute.
 
 See id.
 
 The exchange raising the uncertainty occurred between the trial court and the prosecutor:
 

 THE COURT:
 
 [TJhere’s a finding of not guilty as to the second count alleging as follows:
 
 ‘That he not being a police officer acting in the line of duty without authority knowingly entered the dwelling place of Michael Wells and he had reason to know that one or more persons were present therein and while armed with a dangerous weapon, to wit, a handgun, did
 
 use force
 
 upon Michael Wells within said dwelling place, whether or not injury occurred.’
 
 Finding of guilty.
 

 [PROSECUTOR]:
 
 Judge, there’s a finding of guilty?
 

 THE COURT:
 
 There’s a finding of guilty.
 

 Id.
 

 The appellate court concluded that the trial court did not intentionally find Burnette not guilty of home invasion, reasoning that, “[t]o the extent that the court inadvertently made statements suggesting a finding of not guilty as to count VIII,
 
 *195
 
 those statements were immediately corrected by the court’s unequivocal statements to the contrary.”
 
 Id.
 
 The court noted that “[djouble jeopardy protects against the harassment of successive prosecutions[,]” but that “[s]uch concerns are not implicated where, as here, the trial court makes an inadvertent statement and then corrects it ‘virtually with the same breath.’ ”
 
 Id.
 
 It concluded that “[t]he trial court’s statement did not represent a resolution of ‘some or all of the factual elements of the offense charged.’ ”
 
 Id.
 
 (quoting
 
 Martin Linen Supply Co.,
 
 430 U.S. at 571, 97 S.Ct. at 1355).
 
 See also Illinois v. Vilt,
 
 119 Ill.App.3d 832, 75 Ill.Dec. 346, 457 N.E.2d 136 (1983),
 
 cert. denied,
 
 479 U.S. 864, 107 S.Ct. 219, 93 L.Ed.2d 148 (1986)(when trial judge orally allowed defendant’s motion for directed verdict, then immediately reversed itself, there was no double jeopardy);
 
 Michigan v. Vincent,
 
 455 Mich. 110, 565 N.W.2d 629 (1997)(trial court’s “inchoate impressions [regarding motion for direct verdict] did not mature into a final judgment of acquittal on the charge” so that defendant’s “right not to be placed twice in jeopardy was not violated”).
 
 [5]
 

 In
 
 Francis v. Florida,
 
 736 So.2d 97 (Fla.Ct.App.1999), the Florida District Court of Appeals concluded that the trial court had not granted a motion for judgment of acquittal:
 

 Our review of the record reflects that when the court initially granted the motion, the hearing had not come to an end. Rather, discussions between the court and counsel for
 
 *196
 
 both sides regarding the motion were still ongoing up to and after the point the court granted the motion. At the conclusion of the day’s proceedings, it was clear the court was giving the prosecutor overnight to gather additional case law, and would continue the hearing the next day. Because the court reversed itself before the hearing came to an end, we hold that its initial ruling was not final and, thus, that double jeopardy was not triggered
 

 Id.
 
 at 99.
 

 Reviewing the transcript in this case, we agree with the State that the trial court never granted Allen’s motion for judgment of acquittal. In contrast to
 
 Pugh,
 
 here the trial court never intended to grant the motion, but simply misspoke. Nothing in the court’s comments suggests that the court concluded that there was insufficient evidence on the theft charge. To the contrary, the trial court denied the motion with respect to the more specific charge of theft of a motor vehicle, the count requiring a finding that the defendant actually took the vehicle from the owner. In further contrast to
 
 Pugh
 
 and
 
 Brooks,
 
 the prosecutor here did not provide additional information that caused the trial court to change an initial conclusion. Moreover, our review of the dry transcript is enhanced by the reaction of the court clerk and co-defense counsel, who heard and understood from the court’s comments that the trial court was not granting the motion. Finally, we note that the trial court confirmed to the clerk shortly after the colloquy in question that it had denied Allen’s motions, before Allen was required to present his defense.
 

 We hold that the trial court did not intentionally render a judgment of acquittal on the theft count and, therefore, did not subject Allen to double jeopardy by submitting the theft count to the jury.
 

 VI.
 

 Merger Of Conviction For Unauthorized Use
 

 Allen was convicted of both theft over $500 and unauthorized use of the vehicle. The prosecutor, possibly con
 
 *197
 
 cerned that the convictions might be inconsistent, suggested that the unauthorized use conviction be vacated or merged. The trial court responded that it could merge the conviction. Defense counsel agreed that merger was “fine.” The trial court sentenced Allen to a term of seven years’ incarceration for the theft charge and merged the conviction for unauthorized use.
 

 Allen now suggests that the guilty verdict for unauthorized use was defective because it was inconsistent with the not guilty verdict on the auto theft charge. He asserts that, under
 
 Walczak v. State,
 
 302 Md. 422, 427, 488 A.2d 949 (1985), a sentencing error is reviewable on appeal despite defense counsel’s failure to object below.
 

 As the State points out, no sentence was imposed on the count for unauthorized use, so there was no sentencing error for us to review or correct. In any event, as Judge Moylan explained in
 
 In re Lakeysha P.,
 
 106 Md.App. 401, 447, 665 A.2d 264 (1995),
 
 cert. dismissed,
 
 343 Md. 627, 684 A.2d 5 (1996), unauthorized use of a motor vehicle is a lesser included offense of theft of an automobile and is not inconsistent with it. Merger was appropriate.
 

 JUDGMENTS REVERSED. COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.
 

 [1]
 

 . Detective Brennan explained that NCIC is a national computer database that collects information "throughout the United States on stolen items, missing people, all sorts of information basically."
 

 [2]
 

 . A copy of “Defense Proposed Jury Instruction No. 1” is included in the record. It reads: “If you find that the defendant was acting under the honest belief that the car was not stolen, you must find him not guilty.”
 

 [3]
 

 . The trial court later corrected this instruction, telling the jurors that, with regard to unauthorized use, the motor vehicle did not need to have a value of $500.00.
 

 [4]
 

 . Referring to Md.Code (2002, 2003 Cum.Supp.), section 7-104 of the Criminal Law Article, relating to "general theft."
 

 [5]
 

 . In
 
 Price v. Vincent,
 
 538 U.S. 634, 639, 123 S.Ct. 1848, 1852-53, 155 L.Ed.2d 877 (2003), the United States Supreme Court reversed a grant of
 
 habeas corpus
 
 on double jeopardy grounds. The Court held that the Michigan Supreme Court’s decision was not "contrary to” or an “ 'unreasonable application’ of clearly established law,” nor was it “based upon an unreasonable determination of the facts.”
 
 See id.
 
 In concluding that the decision was not an "objectively unreasonable application of clearly established law," the Court noted that "numerous other courts have refused to find double jeopardy violations under similar circumstances.”
 
 Id.,
 
 538 U.S. at 643, 123 S.Ct. at 1854. The Court cited cases in which trial courts had concluded that an oral grant of a motion for judgment of acquittal that was not communicated to a jury did not terminate jeopardy.
 
 See id.,
 
 538 U.S. at 643 n.
 
 2,
 
 123 S.Ct. at 1854 n. 2 (citing federal appellate decisions as examples).